Mr Chief Justice Marshall
delivered the opinion of the
Court.
The petition for a mandamus states, among other things, that Christopher Adams of Iberville, in Louisiana, .on the Kith day of January 1824, at New. Orleans, executed and acknowledged before a notary public, a mortgage of a plantation, called the Belle Plantation, in Iberville, with seventy slaves, for securing to the petitioners divers sums of money, amounting to 32,522 dollars and 50 cents, at different periods, the last payment to fall due on the 18th- day of January 1829, all bearing interest at the rate of seven per cent per annum. At the time of executing the said mortgage, sundry notes' were also given for the payment of the same sums of money.
- In consequence .of the failure of the said'Adams to pay any part of the said debt, application was made to the honourable Thomas B-. Robertson, then judge of the district court' of the United States for the eastern district, of Louisiana, for an order of seizure and sale, who granted the same, in the following words:
?* Let the mortgaged premises, set forth and stated in the • plaintiff’s petition, be. seized and sold, as therein prayed for, and in the manner directed by law, subject to the payment of the debts of the plaintiff. Thomas B. Robertson, Judge U. ' S. Eastern District of Louisiana.”
John Nicholson, the marshal, who seized the mortgaged property, and advertised the same for sale'; was stopped,, by a writ of injunction, on wdiich the following' return was made :
“ received this' writ of injunction this 18th of March 1S26, and served a copy thereof, and of plaintiff’s petition, on Ripley and Conrad ; on sanie day released the property at suit of Life and Fire Insurance Company of New .York against Christopher Adams, and returned into court the 20th of March instant.”
■On the 2d day of May 1826, the petitioners entered into a transaction with the said Christopher Adams, before a notary public, in which it was stipulated,' that the injunction be dissolved, and in which the defendant agreed to confess judgment, and did confess judgment, on all the notes then due. *593 He further stipulated to confess judgment on .the residue of the notes, in the deed of mortgage mentioned, as they should respectively become due; “ and in default of- such confession of judgment, the said Christopher Adams did, by the said transaction, constitute and appoint Henry Eckford, president of •the Life and Fire Insurance Company,' or hi's successor in office for the time being, his attorney in fact, and irrevocable, in his name and stead to appear in said court and cause judgment to ■ be entered up against him, the said Adams, for each and every of said notes, with interest, as aforesaid; whenever the samé shall arrive at maturity, as aforesaid.” And the said Adams further gave'to the said Henry Eckford or to his successor in office for the. .time being, attorney'as aforesaid, full power of substitution in the' premisses.
• And the said Life and Fire Insurance Company, in consideration of such confession of judgment, and preserving all their liens, mortgages and preferences in and over.the mortgaged premises, agreed to stay execution until the 18th day of'January 1S29, when the last note would arrive at maturity. It was farther agreed, that this transaction shall be entered upon the records of the court of the United States for the eastern district of Louisiana, as a decree of said court, and shall have all the force and effect as though it were entered up in open court.
In pursuance of this transaction, a judgment was recorded in the said district court, on the 18th of May 1826; which the judge died without signing. The petitioners then transferred their interest in the said'debt to Josiah Barker, in trust for the Mercantile Insurance Company of New York, with power to use their names in the collection thereof. In the instrument of transfer, the said Life and Fire Insurance Company constituted Josiah Barker, his executors, administrators and assigns, their true and lawful attorney and attorneys ^revocable, in their names, but to and for the use of the said Mercantile Insurance Company of New York, to pursue and enforce in all courts and places whatever, the recovery and payment of the said money.
■ The honourable Samuel H. Harper, the successor of the honourable Thomas B. Robertson, having refused to complete the said judgment of his predecessor, by signing it; a manda *594 mus was directed by this court, ordering him to do so, in com-, pliance with which, the said judgment was signed.
The judgment is in these words:
“ Life and Fire Insurance Company of New York v. Christopher Adams,
“In this case, the plaintiffs having filed in this court a transaction,' &c. ‘it is therefore ordered, adjudged and decreed, that in pursuance of said transaction, the injunction -in this case shall be dissolved ;and it is further ordered, adjudged antf decreed, that judgment be entered up in favour of the plaintiff, in pursuance of said transaction, for all the notes therein specified, which have become due and payable, with seven per cent interest thereon, &c. to wit, the sum of 1500 dollars, &c.’
“ It is further ordered, adjudged and decreed, in pursuance of the transaction aforesaid, that whenever, any of the notes mentioned.in the said transaction as not yet arrived at maturity, shall become due and' payable, that the judgment shall be.entered up for the plaintiffs -upon all and every of the said notes as they arrive at maturity, &c.'
“ It is further ordered, adjudged and decreed, that there shall be a stay of execution, &c. until the 18th day of January .1829 ; and that if tire amount o,f the judgment in this suit is not then paid, &c., that the lands, slaves and movable property described in the mortgage mentioned in the plaintiff’s petition, shall be sold according to law, to satisfy the judgment in -the premises.”
Application was; at the same time,-made to the district court, to enter a further judgment for the notes which had become due subsequent to the 16th day of May 1826, <vhich was refused.
The petitioners insisted on their right to require a judgment for the whole sum, under the irrevocable power given to. confess it; but the judge declared that without notice to the defendants, he would permit no further judgment to be entered.
The petition states at large the different views entertained by the judge and the petitioners on the application; At length the following rule was entered.
“Life and Fire Insurance Company of New York v. Christopher Adams.
“On morion of George Eustis, counsel-for the plaintiffs, on *595 filing' all the notes referred to in -the transaction on file, it is ordered, in pursuance of the mandamus of the supreme court of. the United States, requiring ■ the honourable judge of this court to sign'the judgment rendered in the premises and to' order execution -to issue, that execution do issue for the whole amount of the judgment.”
Under this rule an execution was issued for the whole sum claimed on all the notes, without any direction that it should be first levied on the mortgaged property. On this account, the marshal, by order of the plaintiff’s attorney, returned'it unexecuted, and a new execution was demanded..
In consequence of the refusal of Judge Harper to enter judgment for the residue of the notes, Josiah Barker caused a -paper to be read in open court, in which, as successor to, and as having entire control over, the said notes, and in virtue of full and irrevocable powers from the Life and Fire Insurance Company of New York, he did, in behalf of the defendant, Christopher Adams, by virtue of the compromise entered into between him and Josiah Barker, agent for the said Life and Fire Insurance Company, on the 2d of May 1826, confirmed by decree of tliis court, confess judgment on all the said notes ; which confession he requested might be entered on the clerk’s minutes. The judge refused to allow the entry, without notice to the opposite party; but offered to.grant a rule requiring the defendants to show cause why the judgment should not be entered. This rule being declined, the judge permitted the confession to be filed, subject to all legal exceptions. An execution for the whole sum was thereupon issued, which was accompanied by a letter from Josiah Barker to the marshal, requesting him to give notice to Christopher Adams, and to Nathaniel' Cox the provisional syndic of the estate of the said Adams, who had become insolvent, that he, the marshal,-considered himself in possession of the property in virtue of the former 'seizure,, and should proceed to sell the same : should the marshal refuse to do this,-the marshal was required to seize tlie properly and to sell it, by virtué of the execution then in his hand.
Supposing from the proceedings of the court.-in a similar case, in which also he was counsel, that the execution issued in this case would be quashed, and the said marshal having-refused to proceed without indemnity against the estate of *596 Christopher Adams,'which had been surrendered under the in--sólvént law of Louisiana, the-said Josiah Barker requested the •marshal.to return this second execution.
On the 30th of Apiil 1834, a new éxecution was issued on the judgment of-the 18th of May 1826, tobe levied on the 'mortgaged property in whose ever hands it might be found.
The marshal refused to execute this writ-, further than by-giving'not ice thereof to Nathaniel Cox, the provisional syndic for the creditors of Christopher Adams; whereupon a petition was presented to the Hon. Samuel H. Harper, praying the interposition of the court by commanding the marshal to sell the ■mortgaged premises without requiring any bond of indemnity; or-by granting a rule requiring the marshal to show-cause why he- should not be attached for contempt of the court, in disobeying or refusing to execute its mandate.
The rule was granted before the time for returning the execution had elapsed, and was therefore discharged, whereupon the marshal made the following-return :
“ May 1st, 1834.
“ Gave notice of the seizure to Nathaniel Cox, esquire, provisional syndic of C. Adams, the defenddnt,'the property having been previously surrendered by him to his creditors, and . accepted,by the court of the fourth judicial district of the state of Louisiana, and placed under the charge and control of N. ■Cox, esquire, as provisional syndic thereof. The further execution of this writ, could not be effected.
“ Returned 19th óf May 1834.
“John Nicholson,
U. S. Marshal.”
Oh the succeeding day a new rule was awarded against the marshal, who appeared on the return day thereof, and showed for cause against it his return on the writ as recited above.
After solemn argument, the judge determined the return of the marshal, that he found the property in the hands of others, was prima facie evidence that it belonged to others; and that he should not require the marshal to take' the responsibility of enforcing the execution without' indemnity.
. On the 37th of May, application was nlade to the judge, to *597 •sign the confession óf'judgment, filed by Josiah Bkrker in the name of Christopher Adams, on the 10th of March, subject to all legal exceptions,-due notice of the filing thereof having been served,on Cluiistopher^Adams and Nathaniel Cox; biit the judge refused to sign the samé, saying .that it was not. a judgment of the court.
The petitioners, conceiving that they are entitled to have •the execution issued on the 30th day of .April 1S34 enforced against the mortgagéd premises bjr the marshal of the United States, and to have a further execution for the balance of their'.aforesaid claim; either by the authority of the aforesaid mandamus, or by having the aforésaid confession of the 10th of March last signed ; or by virtue of the'original order of seizure and , sale or otherwise: pray a further writ, of mandamus,- directed to Samuel H. Harper, judge of the district court of the United States for the eastern district of Louisiana ; and if necessary, also to John Nicholson; marshal of the said court; or otherwise direct such a course of proceeding as will secure, the due execution of the mandamus heretofore granted by this court, and afford them such other relief- as they may be entitled -to in the premises.- ■
Judge Harper appeared by his counsel, and'showed for cause againslissuing the mandamus for which applicafion'was made:
That in obedience to a mandamus issued by the supreme court of the United States, he did, on the 7th day of March 1834, sign a judgment entered in. this cause by his predecessor in office, on the 18th day. óf May 182C, and directed that execution should.issue thereon. This was a specific judgment for the amount of all the notes which had then become due, and which were enumerated in a transaction between the parties then committed to record. It was stipulated in. this act of compromise, on which the judgment was entered, that the defendant, Christopher Adams, should confess judgment on each of the remaining notes ás it should fall due; and in default of such confession, lie consented that Henry Eckford, president of the Life and Fire Insurance Company, or his successor in office for the time being, should appear in court and cause judgment to be entered against the defendant. No confession of judgment has been entered, nor has' any judgment been rendered on any one of the said notes. When the judg- *598 me n't of the 18th of May 1826 was signed, Josiah Barker,' agent for the plaintiffs, offered to confess judgment in the natiie and on behalf of Christopher Adams for the-residue of the notes. The court refused to receive this confession for the following reasons. The plaintiffs, instead of causing judgment to be confessed, in conformity with the stipulation contained in the transaction, appear to have abandoned their original suit. No step was taken until the 13th of April 1829, after all the notes had become due, when a new suit was instituted by the Mercantile Insurance Company of New. York, to whom the claim had been assigned, to recover the whole amount due, including the judgment of the 18th of May 1826. The defendant filed an answer, charging the plaintiffs, among other things, with usury; upon which they, on the 12th of January 1831, suffered a nonsuit: when, after 'this, proceeding, the agent for the plaintiffs offered to confess judgment in the name of the defendant, no notice of this intended confession had been given to the defendant, and a rule upon him. to show cause against the judgment, was declined by the plaintiffs. Had the person offering to confess judgment even been the regularly constituted attorney of the defendant, there would have been, under all the circumstances of the case, some objection to receiving his confession without notice. But he was not the regular attorney. In the transaction of the 2d of May 1826, Christopher Adams stipulated to confess judgment on all the notes as they should become due, “ and in default of such confession, he constituted and appointed Henry Eckford, president of the Life and Fire Insurance Company, or his successor in office for the time being, his attorney in fact, and irrevocable, in- his- name and stead, to appear in court and cause judgment to be entered up,” &c.'; and the said Adams further gave to the said Henry Eckford, president as aforesaid, or to his successor in office for the time being, attorney as aforesaid, full power of substitution in the premises, &c. Josiah Barker is not the substitute of Henry Eckford, or his successor in office for the time being.
The permission to file this paper, subject to all legal exceptions, did not convert it into.a confession of judgment.by- the defendant or his attorney, nor could the mere notice that such a paper-was filed add to its efficacy, there being no day fixed for contesting it. The transfer of the claim to Josiah Barker, *599 in trust for the Mercantile Conipany of New York, does .not substitute him for Henry Eckford, or his successor in office for the time being.
If either the mortgage acknowledged before the notary, or the transaction of the 22d May 1826, had itself the force of a judgment, no mandamus.would be required to order the rendition of a new judgment; but these documents require judicial action to make them operative.
It is a circumstance which ought to suggest, and which has suggested circumspection in the proceedings to be taken in this cause, that though the judgment was recorded in May 1826, and Judge Robertson died late in 1828, and.held several courts in the meantime, yet he never signed this judgment; nor was any application made to him for judgment on the notes which afterwards fell due during his life, though they amounted to ■six or seven'.
In showing cause against a mandamus to compel the marshal to levy an execution on the mortgaged property where-ever it mayffie found, Judge Harper, observes, that after the emanation of the execution, Josiah Barker addressed a petition to the court, stating many facts connected with the execution, and complaining that the marshal refused to enforce it without being indemnified, and praying for a rule requiring him to show cause why he should not be attached for contempt in disobeying the mandate of the court. The rule was granted.
The marshal returned, “ that he had given notice of seizure to Nathaniel Cox, provisional syndic of Christopher Adams, the defendant; the property having been previously surrendered by him to his creditors,' and accepted by the court of the fourth judicial district of the state of Louisiana, and placed under the charge and control of Nathaniel Cox, as provisional syndic thereof; the further execution of the writ could not be effected.”
Accompanying this return Was the following letter:
“John Nicholson, Esq., marshal.
“ Dear sir, As counsel for N. Cox, syndic of the creditors of Christopher Adams, I am authorized to notify you, that any attempt to seize the property in his hands, at the suit of the *600 Life and Fire Insurance Company, will .be resisted, and that, you will proceed therein at your peril.
“ Respectfully,
“ (G-. Strawbridge.”
The court was-restrained from entering into any inquiry in whoni the property was vested, by the considerations, that the creditors who claimed it were not before the court, and could not be brought before it on a rule upon the marshal. The trustee for the Mercantile Company of New York contended, that the property still- remained in possession of the marshal, under the order of seizure granted .by Judge Robertson-; but the- court was of opinion that such presumption would be extravagant, inasmuch as the injunction continued in force, for more than eight years.; for,, though dissolved in terms by the judgment, of May 1826,-. that judgment, by the laws of Louisiana,'had ho force until it was signed in pursuance of the mandamus of tli.e supreme court. In addition to-this, it appears, from the returp of the marshal, that the property was released on receiving the injunction. -
Thejudge also conceived, that by a fair construction of the transaction of the 2d of- May 1826, the plaintiff's must be understood to have agreed to discontinue their suit, in consideration of the dissolution of the injunction; as a prosecution of the suit, after the "dissolution of the injunction, was not within the -intention of the parties. He was also of opinion, that the property being found in.possession of a third party, is no pri-ma facie evidence that it’belonged to that third party; but that this was .a question which could not be investigated, on a rule’againstthe marshal, in the absence of the paity interested. He was also of opinion, that the marshal, not being indemnified, and proceeding at his peril, ought -to be governed by his own judgment;, and would make himself personally liable to the creditors pf Adams, if they should thereafter establish their right to the property ceded to" them. This liability has been established by the supreme court of Louisiana against this very marshal, in which the' court said, “ that if acting in his capacity as .marshal, he wrongs a citizen of a state, he is individually a.»s erable, and in her courts.” In another case judgment was given against the same marshal for the amount *601 of monéy made, by him on an execution, issued oat of the . district court of the United States,- .under which he had seized, and sold .property in the bands of .the' syndic .of the debtor: The judge adds, that lié has never thought, it .his duty-to compel the officers .of'the.court to perform - acts for the benefit of others, which might work' their .own-ruin.
Counsel have given more precision to the general application of the petitioners, by presenting five separate itnd alierna-tive. prayers fot a mandamus.' commanding a'particular thing/; each application founded on the rejection of that which precedes it.
The first is for such an execution as that which was issued on the. -12th of March. 1834, "at the instance of the plaintiffs, being an-execution ior the amount of all the notes sécured by the mortgage and transaction jh the "petition- mentioned; to-be levied on the mortgaged property :but -if|totsufficien't, then.on the property generally of;the said Chriáttíipher Adams, whereof he was owner on the 18th day ofMay 1826, into whose-hands soever the same may have come..
The applicant does not inform us, whether the execution is to be issued on.the. judgment entered by Judge Robertson and signed by Judge .Harper"; .or on the confessiou made'by'Josiah Barker, in' the name of Christopher Adams, on the 10th day,of. March 1834.
Judge Harper has shown for cause against an execution for the- whole debt, on the judgment entered by Judge Robertson on' the 1 Stli day of May 1826, that the whole-debt was not then due; and that the judgment in its terms, comprehends that portion of (.he debt only .which was actually due. He shows for cause against any execution founded on the paper delivered by Josiah Barker, on the 10th day of March 1834, that Josiah Barker exhibited no power Of attorney from Christopher Adams, and showed no right- to personate him'. That the court did not. receive-his confession as the confession of- Christopher Adams, nor enter any judgment upon it. Of consequence, that act cannot warrant an execution of any description.
The record, we think, verifies these statements.
If the cause shown against-a.mandamus to issue such a writ of execution as is asked, or the judgment in its present state be deemed sufficient, then the petitioners aslc for a mandamus. *602 commanding the judge to amend such judgment; by extending the terms thereof, so as. to make'the same absolute upon all the notes and sums of money enumerated in the original transaction, &c.
To extend the judgment to subjects not comprehended within it, is to'make a new judgment. This court is requested to issue a mandamus to the court for the eastern district of Louisiana, to enter a judgment in a cause supposed to be depending in that court; not according to the opinion which it may have formed on the matter in controversy, but according to the opinion which may be formed in this court, on the suggestions of one of the parties. This court is asked to decide that the merits of the cause are with the plaintiffs; and to command the district court to render judgment in their favour. It is an at- ‘ tempt to introduce the supervising power of tliisv court into a cause while depending in an inferior court, and prematurely to decide it. In addition to the obvious unfitness of such a procedure, its direct repugnance to the spirit and letter of oür whole judicial system cannot escape-notice. The supreme court, in-the exercise of its ordinary appellate jurisdiction, can take cognizance-of no case until a final judgment or decree shall have been made in the inferior court. 'Though the merits of the cause may have been,substantially decided, while any thing, though merely formal, remains to be done, this court cannot pass upon the subject. If from any intermediate stage in the proceedings an appeal might be taken to the supreme court, the appeal might be repeated to the great oppression of the parties. So if this court might interpose by way of mandamus in the progress of a cause, and order a judgment or decree ; a writ, of error might be brought to the judgment, or an appeal prayed from the decree : and a judgment or decree entered in pursuance of a mandamus might be afterwards reversed. Such a procedure would subvert our whole system of jurisprudence.
The mandamus ordered at the- last term, directed the performance of a mere ministerial act. In delivering its opinion the court said : “on a mandamus a superior court will never direct in what manner the- discretion of an inferior tribunal shall be exercised ; but they will, in a proper case, require the inferior court to decide.” To order the district court to give *603 judgment for the plaintiffs, is “ to direct in What manner its discretion shall be exercised.”
Sufficient cause is shown against granting this prayer.
In the' event of this prayer being rejected, the court is asked to award a mandamus to the district judge, commanding him to consummate the interlocufbry part of'the said, judgment, by entering and signing final judgment upon and for all the notes and sums of money mentioned in the transaction- aforesaid as not being then due; and thereupon to issue such, execution, &c.
This prayer does not vary substantially from its predecessor. -It requires the same interference of the supreme court in the proceedings of the inferior court while in progress ; and the same‘ .direction how its discretion shall be exercised. It requires a direction to the district court to give judgment for one. of the parties, and prescribes the party for which it shall be given. The cause shown against granting the preceding prayer applies equally to this.
Should this last prayer also be rejected, the court is next asked to award a mandamus commanding the district, judge to compel the marshal duly to execute such process as may be issued; notwithstanding the cession of the estate of the said Adams, and the appointment of a provisional syndic thereof. It is the duty of the marshal to execute all process which may be placed in his hands ; but he performs this duty at his peril, and under the guidance of law. He must, of course, exercise some judgment in its performance. Should he fail to obey the exigit of the writ, without a legal excuse; or.should he, in obeying its letter, violate the rights of others; he is liable to the action of the injured party.
In the particular case in which the creditor asks for a mandamus to the district judge to compel the officer to. seize and» sell the property mentioned in the writ, that property is no longer in possession of the debtor against whom the process is directed ; but has been transferred, by law, to. other persons, who are directed, by the samé law, iti what manner they are to dispose of it. To construe' this law, or to declare the extent of its obligation, the questions must be brought before the court in proper form, and in a case-in which it can take jurisdiction.. This case, so far as it is before any judicial tribunal, is depending in a district court of the United States, and per *604 haps in a state cá>urt of Louisiana. The supreme'court of the United States has no original jurisdiction over it, and cannot exercise appellate jurisdiction previous'to a filial judgment or decree, further than to order acts, purely.ministerial,- which the duty of the district court requires it to perform. This court cannot, in the present condition of the case, construe judicially the laws which govern it, or decide in whom the property is vested. ■ In so doing, ft would intrude itself into the management of, a case requiring all the discretion of the district judge, and usurp his powers.
'Phe mandamus cannot be granted as prayed.
The fifth prayer asks a mandamus requiring the judge to compel the marshal to, execute the writ of execution heretofore issued, on the 30thofApril 1834, on the said'judgment, for the amount of the notes of the said Adams, due on the 16th of May 1836,- notwithstanding the cession and other matters mentioned by the marshal in the return .the'reof.
This prayer differs from that which preceded it only, in the-amount for whi ;h the execution is to' issue. So faV as respects the,interference of the supreme court in construing laws not regularly before it, and controlling the discretion of the district court; they stand on,precisely the same principle. The objections, therefore, which were stated-to granting the fourth prayer, apply equally to the fifth.
The court eannot grant a mandamus ordering-the .district court to perform any one of the specific acts which have been stated in the petition; or in the. more particular application contained in the statement presented by counsel.
Though the supreme- court-will not order an inferior tribunal to render .judgment for or. against either party; it will, in a proper case, order such court to proceed to judgment. Should it be possible, that in a case ripe for judgment, the court before whom it was depending, could, perseveringly, refuse to terminate the cause; this'court, without indicating the character of the judgment, would be required by its duty tq order the rendition of some judgment: but,- to justify this mandate, a plain case of refusing to proceed in the inferior court ought to be made out; In Ex parte Brádstreet., 8 Peters 590, this court said:
“We haye only to say, that a judge must exercise his discretion in those intermediate proceedings which take place *605 betwéen the institution and trial of a suit; and if, in the performance of this duty, he acts oppressively, it is not to this court that application.is to be made.
. “A mandamus, or a rule to show cause, is asked .in the casé ’ in which a verdict has been given, for the purpose of ordering the- judge to enter up judgment upon -the verdict. The affidavit itself shows that judgment is suspended for the purpose of considering a motion which has been made fora néw trial. The verdict was given at the last.- term; and we understand it is not unusual in the state, of New York for á judge to hold a motion for- a new trial under, advisement till the succeeding term. . There is then nothing extraordinary in the fact, that Judge Conklin should take time till the next term to decide, on the motion for a new trial.”
. In the. case now under consideration, no application is made fora mandamus directing the courts generally to proceed to judgment. The petitioners require a mandamus ordering..the judge to render a specific judgment in their favour. It is not-even shown that the case is in a condition for a final judgment; nor is it shown that the’jüdge is unwilling to render one. The contrary may rather be inferred from his readiness to grant a rule on the defendant, requiring him to show cause wh)^ judgment should not be rendered. In a case of such long standing, where it is more than' possible the defendant might not be in court; where judgment is asked on a confession made by the agent of the plaintiffs, professing to be the attorney of the defendant; the judge may be excused for requiring that notice should be given to the defendant.
The rule is discharged.