Points decided.

# TERRITORY OF NEW MEXICO *v.* TOMAS ORTIZ.

ORIGINAL JURISDICTION OF SUPREME COURT.—Original jurisdiction is given to the supreme court of the territory by the organic law of 1850, only in the single instance of the granting of a writ of *habeas corpus.*

AFFIRMATIVE GRANT OF JURISDICTION IMPLIES, WHAT.—An affirmative grant of original jurisdiction in particular cases implies a negative upon its exercise in any other case.

SECTION 3, ARTICLE 4 OF ORGANIC LAW OF 1846 REPEALED.—The organic law of 1850 repeals by implication section 3 of article 4 of the organic law of 1846, relating to the original jurisdiction of the supreme court.

LEGISLATURE CAN NOT EXTEND ORIGINAL JURISDICTION OF SUPREME COURT.— The legislative assembly has no power to extend the affirmative grant of original jurisdiction to the territorial supreme court, beyond the limits of the organic law of 1850.

MANDAMUS, JURISDICTION OF SUPREME COURT TO ISSUE.—The supreme court of the territory has no jurisdiction to issue a writ of mandamus, except where it is necessary in aid of its appellate jurisdiction.

APPELLATE JURISDICTION OVER PROBATE COURTS.—The district courts, and not the supreme court, have appellate jurisdiction over judgments of the probate courts originating under sections 32 and 33 of the Kearny code relating to revenue.

MANDAMUS TO PROBATE COURT IN REVENUE CASE.—The supreme court has no jurisdiction to issue a mandamus to the probate court to proceed to judgment upon a complaint against a merchant for selling goods without a license.

MANDAMUS CONTROLLING DISCRETION AS TO CONTINUANCE.—In the absence of a statute regulating continuances, it is left to the sound discretion of inferior courts to determine for what causes and how long to continue a cause, and until the contrary appears, such discretion will be presumed to have been rightly exercised and with the consent of the parties, and a mandamus to proceed to judgment will not lie.

JUDGE FAILING TO ATTEND TRIAL, MANDAMUS TO.—Where it is alleged as a ground for a mandamus to a judge to proceed to judgment, that he has failed to attend on divers days set for the trial, it must appear that some damage or inconvenience resulted from the failure, and that it was willful and without excuse, or the writ will be denied.

PLEADING CONSTRUED AGAINST PLEADER.—The allegations of a pleading are taken most strongly against the pleader.

MANDAMUS DIRECTING WHAT JUDGMENT TO ENTER, REFUSED.—A mandamus will lie, in a proper case, directing an inferior court to proceed to judgment, but not to give a judgment for or against a particular party.

RULE TO SHOW CAUSE AGAINST MANDAMUS ISSUED IN VACATION.—A rule to show cause why a mandamus should not issue may be issued in vacation.

PETITION for a mandamus. The opinion states the case.

*W. West,* for the petitioner.

*Garey and Smith, contra.*

By Court, WATTS, J.:

The question which is presented by the papers in this case is one which must determine an important branch of the jurisdiction of the supreme court of this territory. The facts out of which it arises are as follows: On the second day of January, 1852, the following petition was presented to one of the associate justices of this court:

Territory of New Mexico, County of Santa Fe, *ss.*

*Territory* v. *Ortiz.*

To the Hon. Grafton Baker, chief justice of the territory of New Mexico, and presiding judge of the first judicial district in said territory: The Territory of New Mexico, by E. P. West, her attorney, would most respectfully represent to your honor that James J. Webb and William Messervy, merchants and partners, trading and doing business under the name, style, and firm of Messervy & Webb, have been and still are dealing and vending goods as merchants in the county of Santa Fe, in said territory, without a license so to deal and vend goods as merchants as aforesaid, as required by law, and although they have been called on by R. M. Stephens, the sheriff in and for said county, to take out such license, they have hitherto wholly neglected and refused, and still do neglect and refuse, to take out such license to deal and vend goods as merchants as aforesaid.

The territory aforesaid, by her attorney aforesaid, would further represent to your honor, that on the second day of October, 1851, Hon. Tomas Ortiz, probate judge in and for the county of Santa Fe, in said territory, issued his warrant upon complaint of the sheriff of said county, as provided by law, under his hand, for the arrest of the said James J. Webb and the said William S. Messervy, in words and figures as follows, to wit:

Territory of New Mexico, County of Santa Fe.

Territory of New Mexico to the sheriff of the county of Santa Fe, greeting:

Whereas complaint has this day been made by the sheriff of said county to me, Tomas Ortiz, prefect and probate judge of said county, that William S. Messervy and James

J. Webb, trading and doing business under the firm and
style of Messervy & Webb, did at the county of Santa
Fe aforesaid, from the twenty-fifth day of June, A. D.
1851, to the second day of October, A. D. 1851, deal as
merchants without a license first obtained, according to
law, you are, therefore, hereby commanded to arrest the
said William S. Messervy and the said James J. Webb, and
forthwith bring them, or either of them, before me, Tomas
Ortiz, prefect and probate judge of said county, at the
court-house of said county, to answer to the complaint of
the territory of New Mexico upon a charge of having dealt
as merchants without a license first obtained, according to
law.

In testimony whereof, I, Tomas Ortiz, prefect and pro-
bate judge, have hereunto set my hand and affixed my seal
this second day of October, 1851.

[L. S.]                          TOMAS ORTIZ, Prefect.

Territory of New Mexico, County of Santa Fe.

In witness whereof, I, James M. Giddings, clerk of said
court, have hereunto set my hand and affixed my private
seal, there being no seal of office provided, the day and year
above written.

J. M. GIDDINGS,
Clerk of the Prefect and Probate Court.

Upon which said warrant the said James J. Webb was
arrested and produced into court by the sheriff of said
county, and upon which said warrant is the return of the
sheriff of the said county, in the letters and figures follow-
ing, to wit: Executed the within by arresting and bringing
to court the body of James J. Webb; William Messervy not
to be found.    October 2, 1851.

R. M. STEPHENS, Sheriff.

That on the arrest of the said James J. Webb, as afore-
said, by the sheriff aforesaid, the said probate judge con-
vened his court for the purpose of taking cognizance of said
complaint, against the said William Messervy and the said
James J. Webb, and did take cognizance of the same; and
after several days spent in determining the preliminary

questions in said case, by said court, and after which said preliminary questions as aforesaid were determined and disposed of and said case ready for trial, the said court, on the third day of October, 1851, adjourned for fifty days, at the expiration of which said fifty days the said court neglected and failed to sit to take cognizance of and to try said cause; and still neglects and fails to sit for the trial of the same, although several other days since the expiration of the said fifty days have been set for the trial of said cause, at which the said court has in like manner failed and neglected to attend for the trial of said cause to the great damage and deception of the said territory, defrauding the said territory out of her just revenue, and to the disorder and violation of the laws of said territory, and to the delay and hindrance of justice. Your petitioner, the said territory, by the said attorney, would therefore pray your honor to grant a writ of mandamus to compel the said Tomas Ortiz, probate judge as aforesaid, to proceed immediately to judgment in said cause against the said William S. Messervy and the said James J. Webb, as aforesaid, and to do prompt justice in the premises and in the execution of the laws of said territory.

E. P. WEST,

Attorney for the Territory of New Mexico.

I, R. M. Stephens, sheriff in and for the county of Santa Fe, in the territory of New Mexico, do solemnly swear that the matters and things set forth in the foregoing petition are true to the best of my knowledge and belief, and that I know the contents thereof.

R. M. STEPHENS.

Sworn to and subscribed before me, this thirtieth day of December, A. D. 1851.

H. MOWER,

Associate Justice United States Supreme Court.

Upon which said petition the following rule was granted: The President of the United States of America to Tomas Ortiz, judge of the court of probate, in and for the county of Santa Fe and territory of New Mexico, greeting: Whereas, we have been informed that there are certain

matters pending in your court wherein the territory of New
Mexico is plaintiff, and William S. Messervy and James J.
Webb are defendants; and whereas, we have been informed
that you have failed to sit in judgment upon said cause;
therefore we command you that you be and appear before
our supreme court, for the territory of New Mexico, at Santa
Fe, in said territory, on Monday, the fifth day of January,
1852, to show cause, if any you have, why you have not pro-
ceeded to trial and judgment in said cause, and why a per-
emptory mandamus shall not issue against you; and also
to abide the further order of our supreme court in the prem-
ises.    Hereof fail not at your peril.

Witness, the Hon. Horace Mower, associate justice of
the supreme court of the territory of New Mexico, issued
this second day of January, 1852.

H. MOWER,
Associate Justice Supreme Court United States, for the
    Territory of New Mexico.

On the back of this process is the following indorsement:
"I certify that I executed the within notice by delivering
to Tomas Ortiz a true copy of the same, January 2, 1852,
John Jones, marshal, by R. M. Stephens, deputy marshal."
On the fifth day of January, A. D. 1852, being the first day
of the present term of the supreme court, the said Tomas
Ortiz appeared in court, and by his attorneys, filed the fol-
lowing motion: *Tomas Ortiz* ads. *Territory of New Mexico*,
mandamus supreme court, January term, 1852.

The said Tomas Ortiz, by his attorneys, H. A. Smith and
J. E. Garey, comes and moves the court to dismiss the
writ of mandamus, issued in this cause.

1. Because the petition for the same is not made by any
person authorized by law to appear for the territory in
court, or before a judicial tribunal.

2. A writ of mandamus can not be issued in vacation,
but in term time.

3. A writ of mandamus to the probate court of Santa
Fe county can only be issued from the district court of the
United States for the first judicial district of said territory.

4. The petition does not show a case requiring the extraordinary remedy of a mandamus.

5. The writ is not such a one as the petition· prays for, nor can such a writ as the petition prays for be issued.

6. E. P. West, Esq., by whom said petition is made, as attorney for the territory of New Mexico, is not, and by law is prohibited from being, attorney for said territory, has not, and by law can not have, any authority to appear in court or before any judicial tribunal for said territory and for any other cause.

SMITH & GAREY,<br>Attorneys for Ortiz.

The question presented to the court by the papers in this case is this: Has authority been conferred upon the supreme court of the territory of New Mexico to issue the writ of mandamus to the probate courts of the territory?

The supreme court of the territory of New Mexico owes its existence to the organic law of congress approved September 9, 1850, providing for the erection of a territorial government for the territory of New Mexico, and it is to that organic law our attention should be first directed, to ascertain the extent of its jurisdiction.

The tenth section of this organic law says: "That the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace. The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of justices of the peace shall be as limited by law, and the said supreme and district courts, respectively, shall possess chancery as well as common law jurisdictions, and the said supreme and district courts of the said territory and the respective judges ·thereof shall and may grant writs of *habeas corpus* in all cases in which the same are grantable by the judges of the United States in the District of Columbia." It is further provided in the tenth section of the organic law " that writs of error, bills of exceptions and appeals shall be allowed in all cases from the final decisions of said district courts to the supreme

court under such regulations as may be prescribed by law, but in no case removed to the supreme court shall trial by jury be allowed in said court."

It will be seen by the above quotations from the organic law, that by that law appellate jurisdiction has been given to the supreme court from the final decisions of the district courts only, and original jurisdiction has been given to the supreme court only in the single instance of the granting of a writ of *habeas corpus*. . It now remains to be considered whether any acts of the legislative assembly, which have been passed since the organization of the territorial government of New Mexico, confer any additional original jurisdiction upon the supreme court. By an act of the legislative assembly of this territory, approved July 25, 1851, it is provided that all laws that have previously been in force in this territory that are not repugnant to or inconsistent with the constitution of the United States, the organic law of this territory, or any act passed at the present session of the legislative assembly, shall be and are continued in force, excepting, in Kearny's code, the law concerning registers of land. If by this section the article in Kearny's code, upon the subject of courts and judicial powers, is in force, a matter in regard to which no opinion is expressed, no other than appellate power is there given to the supreme court.

By reference to our act regulating the practice in the district and supreme courts of the territory of New Mexico, approved July 12, 1851, section 4, it is provided that the district courts of said territory shall have original jurisdiction in all cases, civil and criminal, in which the jurisdiction it not specially delegated to some other court, and such appellate and supervisory jurisdiction as may be granted them by law. By all of the laws now in force in this territory, it can not be perceived that any other or further original jurisdiction has been given to the supreme court of this territory than such as was conferred upon it by the organic law published twenty-second of September, 1846, by Brigadier-general S. W. Kearny. This power of issuing the writ prayed for in this case exists. The third section of article 4, upon the subject of judicial power, says: " The superior

court shall have a general superintending control over all
inferior courts and tribunals of justice, and shall have power
to issue original writs to compel inferior courts and their
officers to perform their duties according to law whenever
they may fail or refuse so to do." This section would
undoubtedly authorize the issuing a writ of mandamus, if
it is now in force and applicable to this court. The action
of civil government imports an act of sovereignty. The
change of the basis of civil government made by the proper
authority, and acquiesced in by the people, must be re-
garded as valid, and the true source from which power must
be derived, and beyond which it can not be extended. The
promulgation by congress of an organic law for this terri-
tory, of necessity repeals and abrogates any existing or-
ganic law, whether emanating from the same or any other
source. The fact that the legislative assembly continued
in force the Kearny code does not affect the matter; for, if
the legislative assembly had power to adopt the organic
law in the Kearny code, and enforce obedience to its re-
quirements, it would be the virtual assumption of sovereignty,
and operate as a repeal of the form of government furnished
by Congress for this territory. In the case of *The Steam-
boat Orleans* v. *Phœbus*, 11 Pet. 175, it was held by the
supreme court of the United States that local laws can never
confer jurisdiction on the courts of the United States; they
can only furnish rules to ascertain the rights of parties,
and thus assist in the administration of the proper remedies
where the jurisdiction is vested by the laws of the United
States. The organic law passed by congress vests in the
supreme court of this territory full appellate jurisdiction;
but it does not give it original jurisdiction in any case but
that of granting writs of *habeas corpus.*

It has been repeatedly decided in courts of the highest
authority that an affirmative grant of original jurisdiction
implies a negative upon its exercise in any other case. By
the constitution of the United States the original jurisdic-
tion of the supreme court of the United States is limited to
cases affecting embassadors, and other public ministers and
consuls, and those in which a state may be a party. Under

this affirmative grant of original jurisdiction the supreme court of the United States decided that congress had no power to extend it: See *Marbury* v. *Madison*, 1 Cranch, 137; *Cohens* v. *The State of Virginia*, 6 Wheat. 264; *Osborn et al.* v. *The Bank of the United States*, 9 Id. 738. Adhering to the principles thus laid down in those adjudications of the supreme court of the United States, the conclusion is manifest that the legislative assembly, by its laws, can not extend the affirmative grant of original jurisdiction to the supreme court of the territory beyond the limits of the organic law of congress approved September 9, 1850. Hence the third section of article 4 of the organic law of September 22, 1846, published in the Kearny code, is not considered in force and can not enlarge the original jurisdiction of this court beyond the limits of the organic law of congress. If the case now under consideration were a case in which the issuing the writ of mandamus was necessary to the exercise of the appellate jurisdiction of this court, the opinion of the court would be quite different. The law in force, under which this cause originated with the probate court, will be found in sections 32 and 33 of the article in the Kearny code, upon the subject of revenue. The thirty-third section says appeals may be taken from all such judgments of the prefect to the circuit court, but no such appeal shall be allowed unless it be taken on the day of trial. It will thus appear that the district, and not the supreme court of the territory. is by law the appropriate tribunal of appellate jurisdiction from the judgment of the probate court. In the case *Ex parte Jesse Hoyt, Collector of the Port of New York*, 13 Pet. 279, the supreme court of the United States refused to issue a mandamus to the district court, upon the ground that the appellate jurisdiction in the case, if any, was direct and immediate to the circuit court of the southern district of New York.

If this view of this case is not well founded; if, in fact, the power of issuing this writ of mandamus to the probate court of Santa Fe county does exist in this court, the question yet remains to be considered, does the petitioner make out in his petition such a case as calls for

the exercise of this power? The facts stated in the petition upon which this motion is predicated are these: First. An adjournment of the case for fifty days after said cause was ready for trial. Second. A failure and neglect to sit for the trial of said cause, although several other days since the expiration of said fifty days have been set for the trial of said cause, at which the said court has in like manner failed and neglected to attend for the trial of said cause. In the absence of law limiting the time for which a cause may be continued, or specifying the reasons or causes which will entitle a party to a continuance, it must be regarded as left to the sound discretion of the inferior court, for what, and how long to continue a cause. For aught that appears in this petition the continuance may have been, and until the contrary appears, this court must presume it to have been right and proper. The petition does not state that either party objected to the continuance, and in the absence of such an averment, this court must conclude that said continuance of fifty days was with the consent of both parties. The case of *Ex parte Martha Bradstreet*, 8 Pet. 588, is in point, upon questions of discretion in inferior courts. In that case a mandamus had been issued against the judge of the northern district of New York, directing him to reinstate certain suits which had been dismissed from the docket of his court, and to proceed to adjudicate them according to law. A motion was made for an attachment against the judge of the northern district for contempt, upon the ground of great delay which had taken place in the proceedings, which was supposed to amount to a contempt of the mandamus. A motion was also made for a rule to show cause why a mandamus should not issue to the district judge. Both motions were overruled, and the supreme court held that a judge must exercise his discretion in those intermediate proceedings which take place between the institution and trial of a suit. The consul of the French republic, under the provisions of a convention between that republic and the United States, applied to one of the United States district judges for a warrant to apprehend Captain Barre, who was alleged to be a deserter from the French

fleet. The district judge refused to issue the warrant, application was made to the supreme court for a mandamus compelling the district judge to issue the warrant, and the supreme court refused to issue the mandamus, upon the ground that the district judge had acted judicially in the case, and that the supreme court had no power to compel a judge to decide according to the dictates of any judgment but his own: See *The United States* v. *Judge Lawrence*, 3 Dall. 42.

So far as the second reason is concerned, the petition does not disclose that any damage or inconvenience resulted from the failure of the probate judge to attend upon the other occasions set for trial, for the petition does not inform us that either party attended on those days or were ready for trial, and if the parties did not attend, or attending, were not ready to proceed with the cause, no damage or inconvenience could result from the absence of the probate judge or his failure to attend. The speedy progress of any cause not infrequently depends as much upon the action of the parties as upon the court. The failure to attend in this case is not charged to have been a willful failure. The probate judge may have been sick and unable to attend, or may have had some other sufficient reason for his absence, and charity requires us to presume he had a valid reason for his absence, unless it is stated to have been willful or shown to be without excuse.

The petition in this case prays for the issuing of a writ of mandamus to compel the said Tomas Ortiz, probate judge as aforesaid, to proceed immediately to judgment in said cause against the said William S. Messervy and the said James J. Webb, and to do prompt justice in the premises and in the execution of the laws of said territory. This language is susceptible of a double construction. It may be considered as meaning simply that the probate judge proceed to judgment in the case referred to, or it may mean that the probate judge be directed to render judgment against the defendants in the case. It is in the power of a pleader, by the use of proper language, to strip his meaning of ambiguity and place the construction intended be-

yond cavil. If the pleader omits to do so, his language must be construed most favorably to the party against whom the pleading is exhibited, and most unfavorably to the pleader. Under this rule of construction this court would have no power to grant such a mandamus as is prayed for in this petition. In the case of *The Life and Fire Insurance Company of New York* v. *Adams,* 9 Pet. 573, the petitioners required of the supreme court a mandamus requiring the judge to render specific judgment in their favor. The petition in that case, like the petition now under consideration, did not show that the case was in condition for a final judgment, nor that the judge was unwilling to render one.

In the same case the supreme court held that they would not order an inferior tribunal to render judgment for or against either party, but that in a proper case it would order such court to proceed to judgment. It is further held by the supreme court of the United States in the same case, that, should it be possible in a case ripe for judgment, the court before whom it was depending should perseveringly refuse to terminate the cause, the supreme court, without indicating the character of the judgment, would be required by its duty to order the inferior court to render some judgment in the case; but to justify this mandate, a plain case of refusing to proceed in the inferior court ought to be made out. In such case the supreme court of this territory would not hesitate to issue a mandamus if necessary in the exercise of its appellate jurisdiction. The writ issued in this case is not a mandamus, but a new rule requiring cause to be shown why a mandamus shall not issue. In cases of doubt or difficulty such rule usually precedes the motion for a mandamus, and is unexceptionable in the present instance, on account of its issuance in vacation. If, in answer to the rule, the party complained of show no sufficient cause why a mandamus should not issue, then on motion the court will direct an alternative or peremptory mandamus against the party complained of. The jurisdiction and power of the district judge in the first judicial district in this case, is a point upon which we intimate no opin-

ion; each district court must settle for itself its juris-diction and power, subject to the review of this court as a supreme appellate tribunal. The expression of an opin-ion on the other points made in this cause is unneces-sary. In the very beginning of the existence of this court it has been thought proper to define at length the position upon which it stands in regard to this important branch of judicial power.

By COURT: It is ordered by the court that the rule in this case be discharged. It is further ordered by the court that the petition herein filed be dismissed.