# Ex Parte ECHOLS.

[APPLICATION FOR MANDAMUS.]

1. *Jurisdiction of supreme court, by mandamus, over speaker of house of representatives.*—The supreme court will not award a *mandamus*, or any other original process, on the application of a member of the house of representatives, to compel the speaker of the house to send to the senate a bill which is alleged to have passed the house, and which he refuses to send to the senate, because of an alleged erroneous construction placed by him, and by the house on appeal from his decision, on the constitutional provision requiring "a vote of two-thirds of each house " to pass such bill.

APPLICATION by J. W. Echols, a member of the house of representatives, from Macon county, for a writ of *mandamus*, or other appropriate process, to be issued to the Hon. Thos. B. Cooper, the speaker of said house, requiring him to send to the senate, for action thereon, a bill lately pending in the house, entitled " A bill to be entitled an act to create a new county out of portions of Macon, Russell, and Chambers." All the material facts are stated in the opinion of the court.

GOLDTHWAITE, RICE & SEMPLE, for the motion.

BYRD, J.—This is an application by a member of the house of representatives for a *mandamus*, or other appropriate process, to be issued, requiring the speaker of the house of representatives to cause a certain " bill which has passed said house " to be sent to the senate. It appears from the application, that the bill is " a bill to be entitled an act to create a new county out of portions of Macon, Russell, and Chambers;" that the bill was regularly "put upon its passage, on the 14th day of February, 1866, in said house, and the vote upon the question whether said bill should pass was, on said last-named day, taken in said house by *yeas* and *nays*, and stood as follows: forty-seven

votes for its passage, and twenty-two against its passage ; that the speaker of said house, on ascertaining that there were forty-seven votes for the passage of said bill, and twenty-two votes against its passage, announced and decided, on said last-named day, that said bill was lost, and had not passed, and that under and by virtue of section two of article two of the constitution of the State, said bill could not be passed by any number of votes in said house less than sixty-seven in favor of its passage ; that an appeal to said house was thereupon taken from said decision of the speaker, and, on said appeal, forty-five members voted to sustain said decision, and thirty-five voted against sustaining said decision ; that the said decision of the speaker, and of those who voted to sustain said decision on said appeal, *was* induced and caused solely by the construction they felt it their duty to place upon said section of the constitution ; and that, by reason of said decision of the speaker, the said bill has been defeated, and is kept from the senate."

These are the material facts, admitted by the speaker in a written consent and admission attached to the application, and the only ones necessary for our consideration, from the view we take of this case. Whether this court has *original* jurisdiction to issue a writ of *mandamus* in any case similar to this, is not necessary to be considered. Nor is it necessary for us to pass on the question, whether the petitioner has such an interest in the subject-matter, as entitles him to come into this court, and ask its aid in controlling the speaker of the house of representatives. But the question we shall consider is, whether this court has the jurisdiction to control the speaker of the house of representatives in respect to the matter complained of.

The speaker decided, that the bill had not passed by a vote of two-thirds of that branch of the legislature ; and an appeal was taken from that decision, to the house, and the house sustained the decision of the speaker. This was a question certainly within the jurisdiction of the speaker and house to pass upon, and is not a mere ministerial duty, but one that pertains to their legislative functions, and is one over which the house has exclusive jurisdiction. No

other department of the government can revise its action in this respect, without a usurpation of power.

In *The State, ex rel. the Attorney-General, v. Porter*, the court say: "That there may be acts of either one, or all the branches of the legislature united, which cannot be drawn in question before the judiciary, will not be denied. Thus, either house may elect its own officers, and the choice cannot be questioned; nor can the exercise of a mere *political* duty by the legislature, or either of its branches, be in any manner controlled." Nor is there any thing in conflict with this, in the case of *Ex parte Pickett*, (24 Ala. 91,) and the *Coosa & Tenn. Rivers Railroad Co. v. Moore*, (36 Ala. 380,) or in any case decided by this court.

This court will not interfere with either of the other co-ordinate departments of the government, in the legitimate exercise of their jurisdiction and powers, except to enforce mere ministerial acts required by law to be performed by some officer thereof; and not then, if the law leaves it discretionary with the officer or department. To this extent, and no farther, do the decisions of this court go, upon this branch of the subject.

In the case of *The United States v. Guthrie*, (17 How. S. C. Rep. 304,) the court say: "Thus, it has been ruled, that the only acts to which the power of the courts, by *mandamus*, extends, are such as are purely ministerial, and with regard to which nothing like judgment, or discretion in the performance of his duties, is left to the officer; but that, wherever the right of judgment or discretion exists in him, it is he, and not the courts, who can regulate the exercise."—See, also, *Brashear v. Mason*, 6 Howard, 92; *Kendall v. Stockton*, 12 Peters, 504; *Decatur v. Paulding*, 14 Peters, 497; *United States v. Judge Lawrence*, 3 Dall. 42; *Life & Fire Ins. Co. of N. Y. v. Adams*, 9 Peters, 573; *The State v. Bowen*, 6 Ala. 511; 8 B. Monroe, 656; *Marbury v. Madison*, 1 Cranch, 137; 32 Penn. R. 223; 11 Grattan, 297; 20 Pick. 495.

We have examined the cases referred in the brief of counsel for the applicant, and find none of them in conflict with the above. It seems to be held by all the authorities, that the writ of *mandamus* can only issue to some officer required

by law to perform some mere ministerial act, or to a judicial officer to require him to take action; but not ir a matter requiring judgment or discretion, to direct or ` ntrol him in the exercise of either. Among all the cas.s and text-books on this subject, none go to the length of laying down the doctrine, that the speaker of the house of representatives, or of a legislative body, in a matter arising in the regular course of legislation, upon which he is called to decide, can be controlled by this, or any other tribunal, except by the one over which he presides ; and *that* having sustained his opinion and action, this court cannot review it. To do so, would be in violation of the 3d article of the constitution, and of principles well established and long settled.

Each department of the government should be careful not to trench upon the powers of the others; and this court should be the more so, as its decisions are to be taken as the measure, in the last legal resort, of the powers which pertain to each department thereof; and while it will uphold its own jurisdiction and powers, it will be careful not to invade or usurp any that appropriately belongs to either of the other co-ordinate branches of the government.

Neither can the house of representatives be viewed in the light of an "inferior jurisdiction," within the meaning of the second section of article VI of the State constitution; nor does the speaker of the house come within the meaning of that section, when he is acting in his legislative capacity, and not as a mere ministerial officer of the law.

It results from these views, that the application is refused; and so let it be entered of record.