BURGESS, J.
This is a proceeding by mandamus begun in this court on the information of a private citizen to compel the presiding officer of the Senate and its secretary, and the speaker of the House of Representatives and its chief clerk, of the Fortieth General Assembly to perform an official *368 act which it is alleged is required of them by the Constitution of the State.
The alternative writ was issued on the twentieth day of May, 1899, and is as follows: “Whereas, it has been represented to our honorable Supreme Court by petition of S. P. Davisson, that on the 8th day of November, 1898, he was over the age of thirty years, a citizen of Missouri for more than a year prior to said election and was elected to the Senate of the State of Missouri from the Fourth Senatorial District of said State, to which he was eligible, and received his certificate of election from the Secretary of State, and on the 4th day of January, 1899, was duly sworn in as a member of said Senate and at once entered upon the discharge of his duties as such Senator under the Laws and Constitution of the State; that said body, to wit, the State Senate, is authorized and empowered by the laws and Constitution of the State to enact such laws for the government of the people in connection with the other branch of the legislature, as they may deem right and proper in the discharge of their duties for the protection of the property and person and government of the people of said State; that in the discharge of his said duties as such senator and in connection with the other senators, said Senate did pass and enact into a law a bill entitled, “An act to prohibit the sale by dramshop keepers of spirituous, vinous- and malt liquors in places other than the dramshop. To prohibit wine rooms, lunch counters, and to amend chapter fifty-six of the Revised Statutes relating to dramshops by the addition of a new section thereto,” said bill being numbered 88. That after said bill had been passed into a law by the Senate as far as could be done by that body, it was sent to the House of Representatives, where it was duly concurred in by said body, after being amended by said House of Representatives, and was duly returned from said House to the Senate aforesaid for the concurrence of that body in said amendment; that said amendments were duly considered by the Senate aforesaid, *369 and were rejected, -of which, non-concurrence said House of Eepresentatives was duly notified and said House refusing to recede from its said amendments, a conference was had by committees duly selected from the Senate and House aforesaid, who after considering the matters submitted to them, did agree and reduce said agreement to writing, and said committees duly reported their said agreement in writing to each branch of the said General Assembly of Missouri, where said reports were received and duly adopted by each of said houses in the manner required by section thirty-two, article four of the Constitution of the State of Missouri, and thereby became a part of the record of said Senate, and by the act of adopting said report, by each of said houses as aforesaid, said Senate bill numbered eighty-eight, the title to which is herein set out with the House amendments thereto, as reported by said conference committee, became a valid and binding act upon the State of Missouri, except the necessary requirement of signing said bill by the presiding officers of said Senate and House of Eepresentatives, and it then became the dirty of you, A. H. Bolte, as presiding officer, and you, W. S. McClintick, temporarily presiding over the Senate, at the time of the passage of said bill No. 88, and the adoption of said conference report, to affix your signature to said bill, and transmit the same through your secretary to the speaker of the House of Eepresentatives that he might affix his signature to said bill, as required, by the Constitution of the State, it being charged and alleged in the petition filed herein that you, the said Bolte, and you, the said McClintick, ■were duly elected as president and presiding officers over said Senate, and that you the said McClintick were the acting presiding officer at the time of the passage of the bill aforesaid, and it was your duty after the passage of said bill, which was the adoption of said conference report, to immediately suspend said business of the Senate and affix your signature to said bill and immediately to cause sa*id bill to be *370 transmitted to the House of Representatives by the secretary of the Senate for the signature of -the said speaker, and it is further charged, that you, as such presiding officer, are preventing the said secretary, who is alleged to be Cornelius Roach, from discharging his said duty in the premises and that you and the said secretary have combined with other persons unknown to petitioner to prevent said bill becoming a law and it is further charged that the-said speaker of the House of Representatives would affix his signature to said ■act, if you would do your duty in the premises. It is further charged that the act aforesaid is an important enactment and law and is for the best interest of the people of the State of Missouri and of all good citizens that it should become a law and would become a law but for the failure of you and your ■associates to do your duty in the premises. It is further charged in said petition that the said A. H. Bolte is the duly elected and acting Lieutenant Governor of Missouri and that .you have been duly elected as temporary presiding officer over the Senate of Missouri and that your duties are fully set forth in the petition filed herein among which is, while so presiding, when a bill has been passed by your body and concurred in by the House of Representatives and returned to the Senate, to immediately suspend all .business and cause said bill to be read in open session and when so read, to affix your signature to the same and cause it to be sent at once to the House of Representatives, and it is further charged that you were the presiding officer at the time of the passage of the bill aforesaid. It is further charged that the said Cornelius Roach is the duly elected and acting secretary of said Senate and that it is his duty to transmit said bill to the other house after being signed by you and also to deliver the same to the Governor and that he is prohibited by you from doing his duty and refuses to do his duty in the premises and that he- refuses to cause the necessary acts to be done to complete said bill as aforesaid. It is further charged that the said W. J. Ward is *371 the Speaker of the House of Eepresentatives, and that lie is-willing to do bis duty in tbe premises as also bis said Obief Clerk of said House of Eepresentatives, wbo bas been legally elected to said position of clerk, but is prohibited from so doing by you and by your refusal to do your duty in tbe premises. It is further alleged in said petition that the petitioner is interested herein and that be makes this request and files this petition in tbe interest of himself and all other good citizens of the State and that be is remediless in tbe premises and that said law is a proper and important one to tbe people of tbe State and should be legally enacted into existence for tbe best interests of tbe petitioner and all other good citizens of tbe State and that through your failure to discharge your duties as aforesaid that said bill will fail to become a law unless we interfere herein by tbe extraordinary Writ of Mandamus; that be bas no other remedy nor have tbe people of tbe State any other remedy.
“Now, therefore, we being willing that full and speedy justice be done in tbe premises, do command you and each of you tbe said A. H. Bolte, tbe said W. S. McClinticlc and tbe said Cornelius Eoacb and tbe said W. J. Ward, and tbe said H. A. Newman, that each of you proceed at once to do your duty in tbe premises and that you tbe said W. S. McClintick as presiding officer of the. Senate of tbe State of Missouri, cause said bill No. 88, as aforesaid, to be read in open session of tbe Senate and that after it is so read, you affix your signature to said bill at once and that you then cause said bill to be transmitted to the. House of Eepresentatives so that said speaker, W. J. Ward, may affix bis signature thereto and you tbe said Ward, as speaker as aforesaid, are hereby required to cause said bill to be read in open session of tbe House of Eepresentatives, and after which that 'you affix your signature thereto immediately and at once return it to the Senate aforesaid .and that you, tbe said Cornelius Eoacb, secretary as aforesaid, deliver into tbe bands of tbe Governor at once said *372 bill No. 88 as amended by tbe committee report, and that you and each of you, do and perform every act required by tbe Constitution and laws of this State of you in order that said bill No. 88, amended as aforesaid, become a law, or show cause before our Honorable Supreme Court at its court room in tbe City of Jefferson, and State of Missouri, on Tuesday, tbe 23d day of May, 1899, at tbe hour of 10 o’clock, why you have not done so.”
Respondents, Bolte, McClintick and Roach made return to said writ as follows:
“Now comes A. H. Bolte, President of the Senate, et ah, aforesaid, and for his return to the said Writ of Mandamus, says that he is President of the Senate of the State of Missouri as eharged. That W. S. McClintick is president pro tempore and C. Roach is secretary of said Senate as charged. That the relator, S. P. Davisson, is one of the members of tbe said Senate of the Fortieth General Assembly as charged.
“The said Senate passed senate bill No. 88 sent through to the House of Representatives, where it was amended by said House and passed as amended, and sent back to said Senate and said House amendment was by the said Senate rejected and said House refused to recede from said amendment, and thereupon a conference committee was appointed by the two houses which conference committee duly considered said amendment and made their report to each of said houses, which report was by said Senate adopted as charged.
“That said bill as amended by said report was thereupon by said Senate put upon its final passage and received but seventeen votes out of thirty-four Senators elect, or one vote less than a constitutional majority, and was by the president pro tempore then presiding, declared lost, and so recorded and entered on the journal of said Senate on the-day of May, 1899, which said ruling of said president pro tempore was not appealed from, and remains in full force and effect.
*373 “That said bill can not be signed for the reason that under the rules of the Senate as authorized by the Constitution, all bills passed must be enrolled by the enrolling clerk of the Senate and the same examined by the committee on enrolled bills and returned to the Secretary of the Senate with the words “Truly Enrolled” indorsed thereon.
“That at the time of the alleged passage of said bill there were under the rules of said Senate duly adopted and enforced an appointed and acting enrolling clerk of the Senate, to wit: One BE. H. Eussell, and also a duly appointed standing committee of the Senate known as the Committee on Enrolled Bills.
“That said bill has not been enrolled nor passed upon nor compared by said enrolling committee and therefore can not be signed by the president and secretary of the Senate for the reason that the same must lie duly enrolled and reported upon as aforesaid before it can be signed by the presiding officer of both houses of the General Assembly in open session after having been fully read at length as required by the Constitution, and the Fortieth General Assembly having, pursuant to a joint resolution duly adopted by both houses on the 22d day of May, 1899, adjourned sine die.
“That under the Constitution of this State this court has no jurisdiction of these defendants, nor of the subject-matter contained in plaintiff’s petition.”
The speaker of the House, W. J. Ward, and its chief clerk, H. A. Newman, made return to said writ in which it is averred that no such bill as the one therein mentioned has ever been presented to them for their signatures, but that if such a bill had been presented to them duly enrolled, and properly certified, as required by the Constitution and laws of Missouri during the Fortieth General Assembly they would have signed the same, etc. That while the General Assembly *374 was in session when the writ was served upon them, it adjourned sine die on May 22, 1899.
To the returns relator filed demurrers which in their nature are general.
The question which lies at the foundation of this proceeding is as to whether or not mandamus will lie by one branch of our State Government against another co-ordinate branch, of which the Legislature is one.
There are three departments of government, the legislative, judicial and executive. The legislative department enacts the laws, the judicial department construes them, and the executive department enforces them. “They are entirely independent of each other, and each is supreme in its own domain. It then becomes important to determine to what extent the judiciary department could interfere in the operations of the other departments by the use of the writ of mandamus. While on the one hand it is claimed that the judiciary must be supreme in the determination of all questions which come before it in the course of legal proceedings, yet on the other hand it is asserted that the other departments, being supreme in their spheres of action, can not be controlled by the judiciary, nor can the judiciary direct them or supervise them in the performance of their duties.” Merrill on Mandamus, sec. 91.
Where the action of the Legislature is within its legislative power it can not be controlled by the judiciary by mandamus, or in any other way, for to do so would be the usurpation of a power which does not belong to the latter.
Ex parte Echols, 39 Ala. 698, was a proceeding by man- ' damus to compel the speaker of the House to send to the Senate a bill which was alleged to have passed the House, and which he refused to send to the Senate, because of an alleged erroneous construction placed by him, and by the House on appeal from his decision, on a constitutional provision requiring a vote of two-thirds in each house to pass the bill, and *375 the Supreme Court refused to award a mandamus or any other legal process on the application of a member to compel him to do so. The court said: “This was a question certainly within the jurisdiction of the speaker of the House to pass upon, and is not a mere ministerial duty, but one that pertains to their legislative functions, and is one over which the House has exclusive jurisdiction. No other department of the government can revise its action in this respect, without a usurpation of power. . . . This court will not interfere with either of the other co-ordinate departments of the government in the legitimate exercise of their jurisdiction and powers, except to enforce mere ministerial acts, required by law to be performed by some officer thereof; and not then if the law leaves it discretionary with the officer or department. '. . . It seems to be held by all the authorities that the writ of mandamus can only issue to some officer required by law to perform some ministerial act, or to a judicial officer to require him to take action; but not in a matter requiring judgment or discretion, to direct or control him in the exercise of either. Among all the cases and text-books on this subject, none go to the length of laying down the doctrine that the speaker of the House of Eepresentatives, or of a legislative body, in a matter arising in the regular course of legislation, upon which he is called to decide, can be controlled by this or any other tribunal, except by the one over which he presides; and that having sustained his opinion and action, "this court can not review it.”
Again in United States v. Guthrie, 17 How. loc. cit. 304, the court says: “Thus it has been ruled, that the only acts to which the power of the courts, by mandamus, extends, are such as are purely ministerial, and with regard to which nothing like judgment or discretion, in the performance of his duties, is left to the officer; but that, whenever the right of judgment or decision exists in him, it is he, and not the courts, who can regulate its exercise.”
*376 So in the case at bar the most that can be said in support of relator’s contention is that the presiding officer of the Senate was in error in ruling that the bill was not passed upon the confirmation by that body of the report of the conference committee with respect thereto; and in putting it to a vote of the Senate. It was with respect to a matter which came strictly within the line of his duties as the presiding officer of the Senate and not merely ministerial. His action required the exercise of judgment and discretion, and was not simply perfunctory.
It is true that in Ex part,e Pickett, 24 Ala. 91, the Supreme Court of Alabama awarded mandamus against the speaker of the House of Representatives of that State, to compel him to certify to the comptroller of p-ublic accounts the amount to which the petitioner was entitled, as a member of said House for mileage or per diem compensation; and that in State ex rel. v. Moffitt, 5 Ohio, 358, under a law which required that the election or appointment of all officers, elected or appointed by the Legislature, should be certified by the speakers of both Houses thereof, mandamus was awarded to compel them to do so. But in both of these cases the acts which the officers were compelled to perform by mandamus were purely ministerial and not within their legislative functions.
The case of State ex rel. v. Mead, 71 Mo. 266, was a quo warranto proceeding, and has no application we think to the case at bar. Nor has the case of the State ex rel. v. Meier, 143 Mo. 439, for the reason that it was a proceeding by mandamus against the president of a subordinate tribunal and not, as in this case, against a co-ordinate branch of the State government. Moreover, it was to compel the performance of an act purely ministerial.
While it is the duty of the Supreme Court to- construe laws enacted by the General Assembly, and, while it has the power to declare them valid or invalid as the case may be, it *377 would be a gross usurpation of power for it to assume functions which belong exclusively to that body.
Our conclusion is that the demurrer to the return should be overruled, and peremptory writ denied, and it is so ordered.
Gantt, P. J. and Sherwood, L, concur.