J. W. DREYFUS *et al.*, Respondents, v. PATRICK F. LONERGAN, Appellant.

**St. Louis Court of Appeals, January 18, 1898.**

1. **Mandamus:** CHARTER PROVISION REQUIRING MAYOR TO SIGN ORDINANCES: CONSTRUCTION.   The duty imposed on the mayor of the city of Louisiana by a charter provision that he shall sign all ordinances passed by the city council, is not discretionary, but purely ministerial and obligatory, for failure to perform which *mandamus* is the proper remedy.

2. **Jurisdiction:** ORDINANCE: VOTE NECESSARY TO PASS.   The court had no power to inquire into the legislative motives.   Nor was it necessary that the ordinance in question should have received a two third vote to entitle it to passage, in the absence of anything in the city charter requiring it, it was sufficient that the ordinance received the vote of a majority of all the members of the city council.

*Appeal from the Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

·AFFIRMED; all concurring, Judge BIGGS in the result.

*D. A. Ball* for appellant.

The court erred in sustaining the demurrer to the answer of appellants to the alternative writ of *mandamus*.   *State ex rel. v. R. R.,* 77 Mo. 143;   High on Ex. Leg. Rem., sec. 6.

*John W. Jump* for respondent.

BOND, J.—The alternative writ of *mandamus* awarded in this case is, to wit:

"THE STATE OF MISSOURI, at the relation of J. W. Dreyfus, John W. Matson, W. T. Findly, Joseph Smith, and James C. L. Thompson,

v.

"Patrick F. Lonergan.

"Before Reuben F. Roy, judge of circuit court of Pike county, Missouri, in vacation, 1897.

"Alternative writ of *mandamus*.

"*The State of Missouri to Patrick F. Lonergan, Mayor of the City of Louisiana, Greeting:*

"WHEREAS, it has been represented to the judge of the Pike county circuit court in said state, that J. W. Dreyfus, John W. Matson, Wm. T. Findly, Joseph Smith, and James C. L. Thompson are residents of the city of Louisiana and members of the city council of the city of Louisiana, which is situated in Buffalo township, Pike county, Missouri, and were members of said council at all the dates hereinafter mentioned.

"That said city council is composed of eight members and is presided over by the mayor, or in his absence, by the president *pro tem*, and that the defendant is and was at all the dates mentioned mayor of said city of Louisiana.

"That said city of Louisiana is organized under a special charter and is governed by the provisions of said charter, and that it is provided in said special charter by section 21 of article seven as follows: 'It shall be the duty of the mayor or president *pro tem* to sign all ordinances, resolutions and memorials passed by the city council and the clerk shall attest the same.'

VOL. 73 app—22

And that under the provisions of said charter and amendments made thereto by the state legislature the said city council has power and authority to make all ordinances not inconsistent with the laws of the state which shall be necessary and proper for carrying into effect the powers conferred upon it and all other powers vested by act of legislature in the corporation, the city government or any department or office thereof, and it is further the duty of the mayor of said city to act as president of said city council and to sign such ordinances, resolutions, etc., when passed by said city council.

"That at a regular session of said city council of said city of Louisiana, held on May 4, 1897, all the members of the city council, including the five plaintiffs herein, were present, and the defendant presiding over said city as mayor, the following ordinance was duly and legally passed by said council, viz.:

"Ordinance No. 1481, entitled 'Amending an ordinance.'

"Be it ordained by the city council of the city of Louisiana, as follows, to wit:

"Sec. 1.   That section (1) one of chapter (7) seven of the revised ordinance of the city of Louisiana be and the same is hereby repealed and such committees as are now holding by virtue of said section be and the same are hereby abolished.

"Sec. 2.   That in lieu of section (1) one of chapter (7) seven of the revised ordinances of the city of Louisiana, that the following section be and the same is hereby adopted:   The city council shall select the following committees, to wit:   A committee on finance and accounts, a committee on ordinances, a committee on streets and alleys, a committee on police, a committee on fire department, a committee on gas and lights, a committee on water and a committee on poor relief.

Said committees shall consist of two members each and the member first selected on the committee shall be chairman thereof, except the committee on poor relief, which shall consist of one member from each ward in the city.

"Sec. 3.   That this ordinance shall take effect and be in full force from and after its passage.

"Passed May 4, 1897,

"Attest . . . . . . . . . . . . . . . . . Mayor

"Clerk.

"And thereupon the said ordinance was presented to said mayor for his signature and he refused to sign the same and still refuses though often requested so to do.

"That before said ordinance shall take effect it is necessary that the mayor should sign the same and that said defendant is unlawfully attempting to exercise a veto power over the acts and proceedings of said city council by refusing to sign the ordinances passed by it, particularly the ordinance above mentioned. That under the charter provisions governing said city and its ordinances hitherto passed in conformity therewith the said mayor has no right to exercise any discretion in the matter of signing ordinances, but that he is a ministerial officer under said provisions in regard thereto. That all legislative power of said city is vested in said city council and the mayor's only authority to participate in legislation or in voting on ordinances other than merely presiding at the meeting is when there shall be a tie vote of the members of the city council on the passage of an ordinance. That by failure and refusal of said defendant to sign said ordinance he unlawfully and illegally prevents the said ordinance from becoming effective and in said unlawful act in refusing and failing to sign said ordinance he prevents the city council from exercising its lawful

rights to make laws for said city and thereby causes an injury, not only to these complainants who constitute a majority of said city council, but also to the public, the inhabitants of the city of Louisiana.''

Plaintiffs further state that said ordinance is within the scope of said city council's authority and is a proper subject of legislation under its charter provisions, and that defendant, in refusing to sign the same, is acting illegally and unlawfully and perpetrating an irreparable wrong. That these complainants and the inhabitants of the city of Louisiana have no adequate remedy at law to repair the injuries resulting from the unauthorized, illegal and wrongful act of the defendant mayor in refusing to sign said ordinance.

''I therefore, being willing that due and speedy justice be done to the said J. W. Dreyfus, John W. Matson, W. T. Findly, Joseph Smith and James C. L. Thompson in this behalf, command you that immediately after the receipt of this writ you do, without further excuse or delay, sign said ordinance as prayed for in said petition, or show cause before my circuit court of Pike county, held at Bowling Green the second Monday in June next ensuing, and the first day thereof why you should not do so. Herein fail not at your peril and have then and there this writ. Witness, the judge of the circuit court of Pike county, Missouri, this twenty-ninth day of May, 1897.

''REUBEN F. ROY,
''Judge 10th Judicial Circuit of Mo.''

The return is to wit: ''In obedience to the alternative writ of *mandamus* served upon Patrick F. Lonergan, mayor of the city of Louisiana, by his attorneys, come and make this his answer to said writ and showing cause why he did not and has not signed the ordinance said, in said writ, to have been passed by said council in said city of Louisiana on the fourth day of

May, 1897. He says that he was elected mayor of said city on the —— day of March, 1897, and within ten days thereafter, as required by the laws of said city for the purpose of organization, and that at said meeting of said city council, all the members thereof being present except Mr. Crawford from the fourth ward, and all of said members participated in said meeting, he as mayor appointed the several committees, as he was required to do by section one of chapter seven of the revised ordinances of 1896 of said city, and the committees thus appointed at said meeting of said city council were duly and regularly approved of by said city council, and said committees thus appointed at once entered upon the duties of their respective offices as official servants and agents of said city and have ever since so continued.

"That thereafter, to wit, on the 4th day of May, 1897, and after Will T. Findly and John W. Matson had been elected members of said city council to fill vacancies in said city council from the 1st and 4th wards of said city, the ordinance named in said alternative writ of *mandamus* was introduced into said city council and received the votes of the five members, to wit, Dreyfus, Matson, Findly, Smith and Thompson. That said pretended ordinance was introduced for the purpose of ousting and removing those members of the several committees appointed as aforesaid, and said ordinance having failed to receive a majority of at least two thirds of the members of said city council, it did not pass. To show to the court it was the purpose and intent of said ordinance to remove the members of the several committees appointed by him as mayor, the said five members who voted for said ordinance did at said meeting of said city council appoint other members of the several committees, or at least attempted to do so, and would have done so had he signed said ordi-

nance.  As another and further reason for neglecting
and refusing to sign said ordinance named in said
alternative writ, beg to say and inform the court that
ever since the organization of the city of Louisiana by
an act of the legislature in 1849 up to this time it has
always and uniformly been the custom and conceded
right of the mayor to appoint the several committees
of said city council to perform certain duties in the
administration of the affairs of said city, and he fol-
lowed not only the long standing custom of all former
mayors and city councils, but the letter of the law,
when he appointed the committees to aid him in the
due administration of the affairs of the city.   He says
that he has good reasons to believe and does believe
and here charges the fact to be that the ordinance
named in said writ was introduced for the purpose and
only for the purpose of embarrassing, hindering, de-
laying and crippling his administration of the affairs of
said city.   He therefore respectfully prays the court to
inquire and fully investigate the matter and things set
up by him in this answer as to his reasons for refusing
to sign said ordinance named in said writ.   And now
having fully answered, asks to be dismissed with his
costs.''

The relators demurred to the above return, which
being sustained and the defendant electing to stand
upon his return, the court awarded a peremptory writ,
from which judgment defendant appealed to this court.

The only questions for review are does the alter-
native writ make out a *prima facie* case for the relief
prayed, and if so, does the return set up any defense
valid in law?  The city of Louisiana exists
under a special charter, whose provisions,
so far as applicable to the questions under
review, are correctly set out in the plead-
ings in this cause.   Acts of 1870, p. 386;

MANDAMUS:
charter provi-
sion requiring
mayor to sign
ordinances: con-
struction.

Acts 1872, p. 432. It will be perceived from an examination of the city charter that the mayor of Louisiana enjoys no veto power; that he is only privileged to vote upon measures under consideration by the city council when the vote of that body results in a tie; that he is made the presiding officer of the council, and as such required to sign all ordinances passed by it before they can go into effect. It is evident from these charter provisions that he acts in a double capacity in his connection with the business of the city council. As having the right to give the casting vote in case of a tie, he is, to that extent, a legislator, and like any other member of the body, exempt from judicial control in exercising that right, upon the familiar principle that the members of no legislative body, of whatever rank or grade, can be controlled by any external authority as to how they shall vote. On the other hand, in discharging the duty imposed upon him as presiding officer to sign all ordinances and resolutions passed by the council, he acts in a manner essentially different from his capacity as legislator. As to the performance of the statutory requirement to sign the enactment of the council, his duties are non-legislative and positively directed, independent of his will or choice, and are absolutely obligatory whenever an ordinance has been passed by the council. These conclusions can not be avoided when the charter provision requiring the mayor to affix his signature to the ordinances passed by the council is called to mind. That provision is as follows: "Sec. 21. It shall be the duty of the mayor * * * to sign all ordinances * * * passed by the city council." This provision in express terms recognizes the *previous passage* of the ordinance before it becomes the duty of the mayor to sign it. In other words, it recognizes, what is a matter of plain sense, that after a final vote adopting an ordinance by the

city council, its power as a legislative body to take any further steps to put the ordinance into operation as a law is at an end.  All succeeding steps are therefore necessarily non-legislative and must be taken by the person or persons upon whom such subsequent duties of authentication and certification have been placed by law.  That the duty imposed upon the mayor under the charter before us is purely ministerial, appears from the fact that it is a specific requirement, independent, after the passage of the ordinance by the council, of any alternative.

If the clear line of demarcation between the legislative character of the action of the council *during* the process of enacting an ordinance, and the charter requirements imposed on certain officers *after* the enactment of the ordinance is borne in mind, all confusion of thought on this subject must disappear. During the legislative stage of an ordinance it is beyond the interference of the courts.  After that stage is passed the right of the courts to compel the performance of statutory duties appertaining to such ordinance depends wholly on the character of the duties in question, whether ministerial or discretionary. Speaking of the applicability of the writ of *mandamus* to proceedings like the present, the rule is laid down in Wilcox on Municipal Corporations, Mandamus and Quo Warranto (star p. 357, par. 46), as follows: "The writ will be granted to compel the mayor to discharge any part of his duty as presiding officer after he has been guilty of a default in the performance of it." This rule is quoted with approval in 2 Dillon on Municipal Corporations [4 Ed.], p. 1012, sec. 831a, note. It is held by the supreme court of Michigan that the mayor, in his function as presiding officer, is vested with no discretion in the announcement of the result of a vote of the body over which he presides and will

be compelled by *mandamus* to render a correct decision. *Tennant v. Crocker*, 85 Mich. 328, *loc. cit.* 338. To the same effect, Beach on Public Corporation, sec. 293. These conclusions are not only the necessary result of reason when applied to the duties of the presiding officer as the signatory of "all ordinances passed" by the city council, but they are also the dictates of the highest policy.

For it is a postulate of our system of government that in the co-ordination of its powers, all faculty of legislation is vested in the body of lawmakers elected by the people. This principle pervades all legislative assemblies from the highest to the lowest. If, therefore, the mere presiding officer of a city council is empowered, by his refusal to perform a statutory duty enjoined upon him after the passage of an ordinance, to frustrate the legislative will of a majority of all the remaining members, then it logically results that the constitutional power of the people to make laws by their representatives is abolished except it be exercised by the consent of one person, and that in him alone is vested the power to dissolve the government of a city by depriving it of a user of its corporate powers. *State ex rel. North and South Railway Company v. Meier*, number 7004, St. Louis Court of Appeals, unreported. In a free form of government no such power can be legally or rationally lodged in one person.

Our conclusion is that the alternative writ of *mandamus* in this case made out a clear right on the part of the relator to the relief prayed. Hence the only remaining question is as to the defense set up by the answer. It is insisted by the return that the motive of the members of the council in enacting the ordinance in question was to abolish certain committees which

JURISDICTION: ordinance: vote necessary to pass.

had been previously appointed by the mayor and thereby embarrass his administration of the affairs of the city. There is no merit in this contention. It is well settled law that there can be no inquiry into legislative motives by the court. Cooley on Const. Lim. 220, *et seq.* 257; Dillon on Mun. Corp., sec. 311; *Brown v. Cape Girardeau,* 90 Mo. *loc. cit.* 383; *Mayor v. Randolph,* 4 Watts & Serg. (Pa.) 514. Neither is there any support in the charter for the suggestion contained in the return that the ordinance enacted by the council should have received a two third vote of all the members to entitle it to passage. It is conceded by the return that the ordinance in question received the vote of a majority of all the members elected to the council. There is nothing in the charter requiring that it should have received a two third vote. The fact that the charter requires a two third vote in order to remove certain officers in the city council has no relevancy to the sufficiency of the vote on the ordinance under review, the only purpose of which was to abolish certain committees appointed for the work of the council. A legislative body has the absolute right by a majority vote to make and unmake committees at its will and pleasure. Our conclusion is that the judgment awarding a peremptory writ in this case was correct, and it will therefore be affirmed.

All concur. Judge BIGGS in the result.