THE STATE *ex rel.* NORTH AND SOUTH RAILWAY COMPANY, *Appellant,* v. MEIER.

In Banc, March 29, 1898.

1. **Municipal Assembly**: LEGISLATIVE AUTHORITY.  The municipal assembly of St. Louis in making laws in accordance with the powers vested in it by the Constitution and laws, exercises powers properly belonging to the legislative department of the State.

2. **Departments of Government**: INTERFERENCE BY COURTS: MINISTERIAL DUTIES.  The courts will not interfere with either of the other coordinate departments of government in the exercise of their powers, except to enforce mere ministerial acts required by law to be performed by some officer belonging to such departments, as to the performance of which the law leaves the officer no discretion.

3. ———: ———: ———: MUNICIPAL ASSEMBLY: PRESIDENT OF COUNCIL. So far as the duties of the president of the council in the city of St. Louis are legislative in character, he is free from the control and supervision of the courts; so far as they are merely ministerial, he is subject to such control as may in a proper case be exercised by the courts by means of the writ of *mandamus* when issued against ordinary citizens.

4. ———: ———: ———: ———: ———: MINISTERIAL ACT DEFINED. "A ministerial act is one which a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed."

5. ———: ———: ———: ———: ———: SIGNING BILLS.  When a bill has been passed by the council of St. Louis, and the journal shows it has been read "on three different days, May 25th, May 28th and July 20th" and no objection is made by any member to the signing of it by the president of the council, and his return to the writ of *mandamus* states, as his only reason for refusal to sign the bill, that it was not read on three successive days as required by the city charter, this court will direct a peremptory writ of *mandamus* requiring him to sign the bill, the charter and laws giving him, at that stage of the bill, no discretion in the matter.

State ex rel. v. Meier.

*Transferred from St. Louis Court of Appeals.*

REVERSED AND REMANDED (*with directions*).

*Leverett Bell* and *John H. Overall* for appellant.

(1) There is no conflict, apparent or real, between the decision of the court of appeals in this case and *State ex rel. v. Stone*, 120 Mo. 428, on which the certificate of the dissenting appellate judge below was made; and the case should be remanded to the St. Louis Court of Appeals for judgment. *McCarty v. O'Bryan*, 137 Mo. 591; Opinion of Brace and Burgess, JJ. (2) *Mandamus* will lie to compel the president of the council of St. Louis to affix his signature to a bill that has passed both houses of the municipal assembly of said city. 2 R. S. 1889, p. 2095; *State v. Noonan*, 59 Mo. App. 523; *State v. Chase*, 43 Mo. App. 343; *State v. Francis*, 95 Mo. 44; *State v. Hoblitzelle*, 85 Mo. 620; *State v. Garesche*, 65 Mo. 480; *State v. Meyers*, 80 Mo. 601; *State v. Berg*, 76 Mo. 136; *State v. St. Louis School Board*, 131 Mo. 505; *State v. Joplin Water Works*, 52 Mo. App. 312; *State v. Shannon*, 133 Mo. 139; *State v. Flad*, 23 Mo. App. 185; *State v. School Board*, 134 Mo. 296; *Littlefield v. Newell*, 85 Me. 246; *State v. Monroe*, 15 So. Rep. 625; *State v. Barber*, 34 P. 1028; *State v. Elder*, 31 Neb. 169; *Ex parte Rickett*, 24 Ala. 91; *Marbury v. Madison*, 1 Cranch, 137; *Kendall v. U. S.*, 12 Pet. 524; *U. S. v. Schurz*, 102 U. S. 378; *State v. Stone*, 120 Mo. 428; *Railroad v. Governor*, 23 Mo. 353; *State v. Governor*, 39 Mo. 388; *State v. Ames*, 31 Minn. 440; *State v. Ricord*, 35 N. J. L. 396; *People v. Opdyke*, 40 Bard. 306; *Duncan v. Louisville*, 8 Bush. 98; *Ex parte Echols*, 39 Ala. 698; *State v. Mead*, 71 Mo. 266; *Opinion to*

*Senate,* 9 Col. 641; Reed's Parl. Rules, sec. 86; Cushing's Manual, secs. 259 and 297–311; 1 Greenl. on Ev. [Lewis Ed.], sec. 491; Cooley Const. Lim. [6 Ed. Angell] 162; *Koehler v. Hill,* 60 Iowa, 543; *Atty-Gen'l v. Rice,* 64 Mich. 385; *Wise v. Bigger,* 79 Va. 269; *People v. Devlin,* 33 N. Y. 277. (3) The question in a proceeding by *mandamus* whether the relator is competent to maintain the action can only be raised by demurrer to the alternative writ, and in the present case was waived by the act of defendant in answering to the merits in the court below. R. S. 1889, secs. 2043, 2047; *State v. Sappington,* 68 Mo. 454. (4) If the question is open to discussion the proposition is submitted that a corporation to which is granted by bill the right to construct, maintain and operate a street railway in St. Louis has sufficient interest to invoke *mandamus* to compel the president of the council to affix his signature to the bill after the same has passed both houses of the municipal assembly of said city. Sec. 20 art. 12; State Const.; 2 R. S., pp. 2099, 2132; *Railroad v. Springfield,* 85 Mo. 674; *State v. Flad,* 23 Mo. App. 185; *State v. Murphy,* 130 Mo. 10; *State v. Francis,* 95 Mo. 44; High Ex. Leg. Rem. [2 Ed.], secs. 431, 432, 433.

*Charles Claflin Allen* for respondent.

(1) The defendant is vested with a legislative discretion which is not subject to review by the courts by *mandamus.* Section 22, of article 3, of the city Charter, vests in the president of the council a legislative discretion which can not be controlled by *mandamus.* Under the charter no other city officer can perform the duties devolved by this section upon the president of the council. These duties are necessary to the valid enactment of an ordinance. They are in no

sense ministerial. Where a shred or atom of discretion is vested in a public officer, that discretion is not subject to review by *mandamus*. "The spur of *mandamus*" may be applied to the officer to compel him to exercise his discretion, but can not direct what conclusion or decision or judgment shall be rendered. *State ex rel. v. Gregory*, 83 Mo. 123; *State ex rel. v. Flad*, 108 Mo. 644; *State v. Governor*, 39 Mo. 388; *State ex rel. v. Stone*, 120 Mo. 428; *School District v. Gooding*, 120 Mo. 67; *State ex rel. v. Garesche*, 65 Mo. 480; *Marbury v. Madison*, 1 Cranch, 137; *Ex parte Echols*, 39 Ala. 698; High on Ex. Rem. [3 Ed.], secs. 125 and 135; *People v. Hatch*, 33 Ill. 9. (2) Even if the courts have control over the defendant by *mandamus* they will not exercise such control in a case of this character. It is discretionary with the court in all cases whether it will issue *mandamus*. *State ex rel. v. Railroad*, 77 Mo. 143; High on Ex. Rem., sec. 9; *School District v. Gooding*, 120 Mo. 67; *State ex rel. v. Williams*, 99 Mo. 291; *State ex rel. v. Newman*, 91 Mo. 445; *Ware v. Water Works Co.*, 2 Rus. & M. 470. (3) A provision in the organic law requiring every bill to be read on three different days is mandatory. Cooley's Const. Lim. [3 Ed.], p. 139; *People v. Campbell*, 3 Gilm. 466; *McCullough v. State*, 11 Ind. 427; 1 Dill. Mun. Corp., secs. 291 and 309, p. 388, note 2; *In re Addison Smith*, 52 N. Y. 526; *In re Phillips*, 60 N. Y. 16; *In re Little*, 60 N. Y. 343; *In re Anderson*, 60 N. Y. 457; *In re Douglas*, 46 N. Y. 42; *State v. Hoboken*, 38 N. J. Law, 110; *State v. Smith*, 22 Minn. 218. (4) Parol evidence is admissible to contradict the recitals of the journal of the council in a case of this character. 1 Dill. Mun. Corp., sec. 300; *Bank v. Dandridge*, 12 Wheat. 64. (5) The rule that parol evidence is not admissible to contradict a written instrument is applied only in suits between parties to that

instrument; as they alone are to blame if the writing contains what was not intended or omits that which it should have contained. Greenl. on Ev. [11 Ed.], sec. 279; *Dia v. Brogan*, 70 Cal. 136; *State ex rel. v. Maloney*, 113 Mo. 367; *State v. Gonce*, 79 Mo. 600; *State ex rel. v. Meade*, 71 Mo. 268; *Thompson v. Williams*, 7 S. & M. 270.

BRACE, J.—The respondent is president of the council of the city of St. Louis. On the ninth of August, 1897, an alternative writ of *mandamus* was issued by the circuit court, city of St. Louis, commanding the respondent to sign house bill number 59, being an ordinance granting certain rights, privileges and franchises to the relator, or show cause why he should not. To which writ, for such cause, the respondent made return, in substance, that said house bill number 59 never was read on three different days before the council of the municipal assembly as required by the charter. On the hearing it appeared from the journal that the bill was read in the council "on three different days, May 25th, May 28th and July 20," and oral testimony was introduced, over the objections of relator, tending to prove that the bill "was read at length in the council once on May 25th; by its title on May 28th, again by its title on July 13th, and at length in committee of the whole on July 20th, and that there was no other reading before its alleged passage." Thereupon the court found for the respondent, dismissed the relator's bill, rendered judgment in respondent's favor for costs, and the relator appealed to the St. Louis Court of Appeals, where the judgment of the circuit court was reversed, Judge Biggs dissenting, and deeming the decision of the majority of the court in conflict with the decision of this court in *State ex rel. v. Stone*, 120 Mo. 428, the case was certified here for determination.

In *State ex rel. v. Stone* it was held that *mandamus* will not issue to the Governor to compel the performance of any duty pertaining to his office, prescribed by law, and it is contended for respondent that the same rule applies to the president of the council of the city of St. Louis, under the requirement of the Constitution, article III, that "The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person or collection of persons charged with the exercise of powers properly belonging to one of those departments shall exercise any power properly belonging to either of the others except in the instances in this Constitution expressly directed or permitted." The contention is that the respondent as president of the council in signing a bill passed by the municipal assembly in order that it may become an ordinance of the city, is charged with the exercise of a legislative power over which the judicial department has no control.

By the charter of the city of St. Louis its legislative power is vested in a council and a house of delegates styled the "Municipal Assembly of the City of St. Louis" (sec. 1). The council consists of thirteen members, one of whom chosen on a general ticket by the qualified voters of the city for four years is "president" (secs. 2 and 8). It is further provided by the charter that "No ordinance shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose. Bills may originate in either house, and may be amended or rejected by the other, and every bill shall be read on three different days in each house. No bill shall be considered for final passage unless the same has been reported upon by a committee" . . . . . . . (sec. 13). No bill shall become an ordinance unless on its

final passage the majority of the members elected to each house vote in its favor and the vote be taken by yeas and nays and the names of the members voting for and against the same be entered on the journal (sec. 16), and when a bill shall have thus attained its final passage the charter provides that it shall not become an ordinance "until the same shall have been signed by the presiding officer of each of the two houses in open session; and before such officer shall affix his signature to any bill, he shall suspend all other business, declare that such bill will now be read, and that, if no objections be made, he will sign the same to the end that it may become an ordinance. The bill shall then be read at length, and if no objection be made, he shall, in the presence of the house in open session, and before any other business is entertained, affix his signature, which fact shall be noted on the journal, and the bill immediately sent to the other house. When it reaches the other house, the presiding officer shall announce the reception of the bill and the same proceeding shall thereupon be observed in every respect as in the house in which it was first signed. If in either house any member shall object that any substitution, omission or insertion has occurred so that the bill proposed to be signed is not the same in substance and form as when considered and passed by the house, such objection shall be passed upon by the house and if sustained, the presiding officer shall withhold his signature" (sec. 22). Having thus received the signature of the president of the council it must then be presented to the mayor for his approval or disapproval before it can become law (sec. 23).

That the municipal assembly in thus making a law by virtue of the power vested in it under the Con-

stitution and laws of the State, exercises powers properly belonging to the legislative department of the State, is beyond question. *Taylor v. Carondelet*, 22 Mo. 105; *St. Louis v. Foster*, 52 Mo. 513; *State v. Vic de Bar*, 58 Mo. 395; *Moore v. Cape Girardeau*, 103 Mo. 470; *Union Depot v. Railroad*, 105 Mo. 562; *Jackson v. Railroad*, 118 Mo. 199; 2 Dill. Mun. Corp. [2 Ed.], sec. 245. That the respondent as president of the council is a person charged with the exercise of legislative power is evident, and that the courts will not interfere with either of the other co-ordinate departments of the government in the exercise of their powers, except to enforce mere ministerial acts required by law to be performed by some officer thereof, as to the performance of which the law leaves the officer no discretion, is the well settled law of the land, universally recognized since the decision in *Marbury v. Madison*, 1 Cranch, 64, in which MARSHALL, Chief Justice, speaking for the Supreme Court of the United States declared the rule, that whether *mandamus* would lie or not is to be determined "not by the office of the person to whom the writ is directed, but by the nature of the thing to be done." Some diversity of opinion however has arisen since that decision in 1803 in regard to the office of Governor of a State. In the courts of many of the States it has been held that all the duties imposed upon the Governor by law are executive, to the performance of none of which can he be coerced by *mandamus*. In others it has been held that while he is independent as to all acts pertaining to his executive office, nevertheless he is subject to the law like every other individual in the State with respect to all duties of a purely ministerial character as distinguished from those belonging to his executive office. 14 Am. and Eng. Ency. of Law, p. 143, sec. 3, note 1.

In the recent case of *State ex rel. v. Stone*, 120 Mo. 428, the leading cases upon this question are collated, from an examination of which the court found that the weight of authority was in favor of the first proposition, and considering his official oath under the Constitution, and that in addition to the provisions thereof hereinbefore quoted it is further provided by that instrument, that "the' supreme executive power shall be vested in a chief magistrate who shall be styled the Governor of the State of Missouri," who "shall perform such duties as may be prescribed by law," and "take care that the laws are faithfully executed," it was held that "any duty prescribed by law for the Governor to perform is as much part and parcel of his executive duties as though made so by the most solemn language of the Constitution itself," and hence that "*mandamus* will not issue to the Governor to compel the performance of any' duty pertaining to his office whether political or merely ministerial." The office of president of the council of the city of St. Louis is the creature of delegated statutory power; his power is measured by the terms of the charter, and nothing can be found in the nature of the office thus created that brings it within the principle announced in this case, or of any of the numerous cases therein cited, or which may elsewhere be found. So far as the duties of the office are legislative in character, he is free from the control and supervision of the courts; so far as they are merely ministerial in character he is subject like other ordinary mortals to such control as may in a proper case be exercised by the courts by means of the writ of *mandamus*. So that the controlling question in this case is whether the act sought to be enforced is or is not a mere ministerial act? "A ministerial act is one which a public officer is required to perform upon a given state of facts in a prescribed

manner in obedience to the mandate of legal authority, and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed.'' Merrill on Mandamus, sec. 30; *Marcum v. Com'rs*, 42 W. Va. 263, and cases cited.

The respondent is a public officer of the city of St. Louis, who is required to perform the act of signing his name to a bill passed by the municipal assembly, at that stage of the procedure in that body when the bill shall have reached him for that purpose in the manner prescribed by the charter. Is he by the charter, that legal authority from which he derives all his power in the premises, invested with any discretion whatever as to whether he will or will not then sign the bill? This is the crucial question, and is answered by the terms of the charter itself. The state of facts is therein given in which he shall, and in which he shall not sign the bill. ''If no objection be made he *shall* in the presence of the house, in open session and before any other business is entertained *affix his signature*. ''If any member shall object that any substitution, omission or insertion has occurred so that the bill proposed to be signed is not the same in substance and form as when considered and passed by the house such objections shall be passed upon by the house and if sustained the presiding office *shall withhold his signature*.'' The conditions upon which he shall either sign or withhold his signature, are here prescribed in unmistakable terms. If no objections be made ''he shall sign.'' If objections are made and sustained by the house he ''shall withhold his signature,'' and conversely, if objections are made and not sustained by the house, he must sign, and this he must do without regard to his own judgment or opinion concerning the propriety or impropriety of the act. In the language of the charter his act has to do with a bill which has

been "considered and passed." When the president is called upon to perform this act the time for legislative deliberation has passed. The only legislative discretion left at all is left in the house, and that is limited to determining whether the bill which the president is called upon to sign is the identical bill which had been "considered and passed" and when this discretion has been exercised and the question affirmatively determined, nothing is left to be done but the mere physical act of signing the bill, and this was precisely the status of the bill when the president refused to sign in this case. This limitation and the proceedings under it easily distinguish this case from that of *Ex parte Echols*, 39 Ala. 698, upon which reliance seems to be placed to support the conclusion reached by the learned circuit judge. In that case *mandamus* to the Speaker of the House of Representatives of the General Assembly of the State compelling him to send to the Senate a bill which he had decided had not passed and in which decision on appeal he was sustained by the House, was refused— for the obvious reason that the House having sustained the decision of the Speaker, to constrain him to do an act in contravention of its decision in a matter within its legislative discretion, would be an unwarrantable interference with the legislative powers of that body. In this case to grant the writ is to constrain the president to do an act in compliance with the decision of the council in a matter upon which it had exercised its legislative discretion, and thereby to sustain the legislative power of that body, and the independence of the legislative department of the government in all matters within its jurisdiction; to refuse it would be to subordinate that power to the judgment of its presiding officer and practically to invest him with a power of

veto upon its legislation not granted in the charter. Therefore the writ should have been granted. If this conclusion from the premises stated be correct, consideration of the other questions discussed in the briefs of counsel is unnecessary, and in view of the extended consideration which the case has received in the opinions of the judges of the court of appeals, we deem further elaboration also unnecessary. The judgment of the circuit court will be reversed, and the cause remanded with directions to that court to issue a peremptory writ of *mandamus* requiring the respondent to sign house bill number 59. GANTT, C. J., ROBINSON and WILLIAMS, JJ., concur; SHERWOOD, J., dissents; BURGESS, J., absent; MARSHALL, J., not sitting.