THEODORE WEBER, Respondent, v. DENNIS LANE et al., Appellants.

St. Louis Court of Appeals, February 17, 1903.

1. Cities of the Fourth Class: GRANTING LICENSE TO KEEP DRAMSHOP: JUDICIAL ACT. The board of aldermen of a city of the fourth class, in passing upon the qualifications of an applicant to keep a dramshop in such city, act in a judicial capacity.

2. ———: ———: STATUTORY CONSTRUCTION. The power to regulate dramshops, within a city of the fourth class, is expressly conferred on the mayor and board of aldermen of such city by section 5978, Revised Statutes 1899.

3. ———: ———: ———: PRIVILEGED COMMUNICATIONS. The appointment of a committee of board of aldermen of a city of the fourth class to investigate charges made against a dramshopkeeper in such city, and the report of the committee so appointed are acts within the discharge of the official duty of such officers and are for that reason privileged.

4. ———: ———: ———: IMPLIED MALICE: ACTUAL MALICE. And the appointment of a committee by the board of aldermen of a city of the fourth class to investigate charges against a dramshopkeeper, and the report of such committee, being privileged communications, malice can not be implied, and no recovery can be had against them in an action, without proof of actual malice.

5. ———: ———: ———: ———: EVIDENCE. In the case at bar, there is no evidence proving or tending to prove actual malice on the part of the defendants.

Appeal from St. Louis County Circuit Court.—Hon. J. W. McElhinney, Judge.

REVERSED.

STATEMENT.

. Omitting caption the petition is as follows:

"Plaintiff for this his amended petition and cause of action herein filed by leave of court first had and obtained states: That on the 1st day of November, 1901, and at all times hereinafter stated, the city of Kirkwood, St. Louis county, Missouri, was a duly incorporated city of the fourth class under the laws of the State of Missouri with such powers and authority only as in it vested by the laws of said State.

"That at the time aforesaid plaintiff was, as he has been for thirty years last past and still is a citizen of said city of Kirkwood, and as such, at the date first aforesaid was the head of a family, consisting of wife, sons and a grown and younger daughters, and engaged in said city as he has been for many years and still is in the retail grocery and general merchandising business, and also since on or about the 4th day of July, 1901, in that of a lawful licensed state, county and city dramshop-keeper in the building and premises occupied by him and his family residence—and for his success in said avocations he was and is greatly dependent upon the good will, respect, esteem and patronage of the citizens of said city of Kirkwood and its vicinity, and has always conducted such avocations and deported himself, as have his family, as to entitle himself and family to the said good will, respect, esteem and patronage—and they have enjoyed the same. And plaintiff states that he has ever been in every respect a law-abiding citizen and never was charged with or suspected of being guilty of any violation of the law or the law of said city or the State or of being deserving of or a lawful subject for special police surveillance, until as hereinafter stated, plaintiff complaining states that defendants were on or about the 11th day of November, 1901, severally members of the board of aldermen of said city of Kirkwood and constituted a ma-

jority of said board, and as such and that whilst said board of aldermen had only such judicial supervisory control over plaintiff's conducting and management of his avocations as dramshop-keeper as vested in them by the ordinances of said city which was then that prescribed by section 13, of ordinance No. 59, of said city, to-wit:

" 'Whenever it shall be shown to the board of aldermen upon the application of any person, that any dramshop-keeper in this city has not kept at all times an orderly house, the board of aldermen may order the license of such dramshop-keeper to be revoked, and from the date of such order the dramshop-keeper shall be deemed to have no license and to be without the authority of law to act as a dramshop-keeper; but the dramshop-keeper shall be notified in writing of such application five days before the order shall be made, and costs shall be awarded against the losing party.'

"Nevertheless said defendants well knowing their limited authority over plaintiff as such dramshop-keeper and purporting to act as the board of alderman of the town of Kirkwood, but in fact wrongfully designing to injure plaintiff in his good name and repuation and in his said several business avocations or in wanton disregard of the injury thereto by their so doing, received as such board of aldermen the following false and libelous communication, to-wit:

" 'KIRKWOOD, Mo., Nov. . . . ., 1901.

" 'To the Town Board of Kirkwood, Mo.

" 'HONORABLE SIRS: Whereas, we, the respectable colored citizens of Kirkwood, Missouri, see the immorality and vice that's being carried on in Theodore Weber's saloon on Main street. We would like to call your attention especially to the frequenting of this place by the young colored girls of this town, many under age. Our talking and pleading are in vain.

" 'Therefore, we feel it our indispensable duty to petition you to help us suppress the one evil men-

tioned above if no more. We feel that this board composed of honorable, intelligent, respectable, honest, law-abiding citizens of this town will do something to eradicate this awful evil, that is a disgrace to the self-respecting negro of Kirkwood.

"'G. S. Brooks,

(Signed.)      "'J. A. Mitchell, and others.'

"And defendants well knowing the same to be false and did not bear the genuine signature of any of the purported signers thereof, did thereupon without authority in law so to do, but wrongfully, maliciously and designedly' to injure plaintiff in his good name and business as aforesaid, in open session, speak and publish the same and without any notice whatsoever to plaintiff, did assume jurisdiction thereof and refer the same to defendants Dennis Lane, Charles H. Ricker and G. J. Kendell as a special committee of their number for investigation and report thereupon to said board.

"Plaintiff states that the said Lane, Ricker and Kendell did thereupon well knowing they were without authority in law so to do and for the purpose of injuring plaintiff as aforesaid, without any notice to plaintiff of their intention so to do, held an ex parte examination of witnesses touching said communication, and did thereupon falsely, willfully, maliciously and libelously speak and publish of plaintiff in said subject of inquiry to said board of aldermen, in open session, by written report as follows, to-wit:

"'Kirkwood, Mo., Dec. 2, 1901.

"'The Honorable Mayor and Board of Aldermen:

"'The committee appointed to investigate the complaint made by Messrs. Mitchell, Brooks, Arnold and others against Theodore Weber, a saloon-keeper on Main street in the city of Kirkwood, have heard the complainants and their statements that they have no desire to injure Mr. Weber in the lawful pursuit of his business as grocer and saloon-keeper, but knowing

from their own observation that young colored men and girls were in the habit of congregating on his premises and thereby exposing themselves to the temptation of drinking liquor and otherwise misbehaving themselves, and being impelled by a desire for the welfare of their race, decided to lay the matter before the proper authorities.

" 'Your committee would recommend that the city marshal be instructed to give the matter attention and that the request of the petitioners be complied with in suppressing the alleged offenses and if found to continue, that the attention of the board be again called to the matter by the marshal.

" 'DENNIS LANE, Chairman.'

"And the said defendants without authority of law and knowing said report to have been made without notice to plaintiff and was ex parte and unlawful, then and there without notice to plaintiff openly and publicly caused said report to be read and publicly accepted, approved and spread upon the record of said city.

"Thereby charging and intending to charge plaintiff with having been guilty of keeping a disorderly and disreputable house, in violation of the laws of the State of Missouri and said city of Kirkwood in such cases made and provided and of being a proper person for police surveillance.

"Plaintiff says that said alleged offenses in said communication aforesaid were false and maliciously charged against plaintiff and were known so to be when received by defendants and considered, spoken and published by them as aforesaid.

"Plaintiff states by the said act of defendants herein complained of he has lost and been damaged in his said business avocations as aforesaid in the sum of five thousand dollars, for which sum of five thousand dollars he prays judgment against defendants herein, and plaintiff states that by the said act of de-

fendant's herein complained of he has been damaged in his good name and reputation in the sum of five thousand dollars, and for which sum of five thousand dollars he prays judgment against said defendants.

"Wherefore plaintiff prays judgment herein against defendants in the aggregate sum of ten thousand dollars, with costs of suit."

Defendants filed the following answer to the petition, to-wit:

"Now comes the defendants in the above cause, and by leave of court first had and obtained, file this their amended answer to the plaintiff's amended petition. And answering, say they deny each and every allegation in said petition contained, except as hereinafter specifically admitted. They admit that at all times referred to and when doing all the acts complained of by plaintiff in his said amended petition, they were members of the board of aldermen of the city of Kirkwood, Missouri, duly elected and qualified, and while doing the acts complained of in the discharge of their official duties as members of said board of aldermen as aforesaid.

"Further answering, defendants say that at all the times mentioned by plaintiff in his said amended petition and for a long time prior thereto, the city of Kirkwood, Missouri, was, as is now, a corporation duly organized under the laws of the State of Missouri, as a city of the fourth class and charged with all the duties and entitled to all the privileges of such cities, under the laws of the State of Missouri. That at all of said times and now, the defendants were and are members of the board of aldermen of said city, duly elected and qualified and in the discharge of the duties of their said offices. That at all of the times referred to and when doing all the acts complained of by the plaintiff in his said amended petition, defendants were engaged in the discharge of their official duties as members of said board of aldermen, regularly convened for

the transaction of the business of said city of Kirk-
wood, Missouri, and in the discharge of the duties en-
joined upon them by law and the ordinances of said city.
That while so engaged in the open session of said board
of aldermen, there was filed with the said board, a
certain petition in language following, to-wit:

"'Kirkwood, Mo. Nov. ...., 1901.
"'To the Town Board of Kirkwood, Mo.

"'Honorable Sirs: Whereas, we the respecta-
ble colored citizens of Kirkwood, Missouri, see the im-
morality and vice that's being carried on in Theodore
Weber's saloon on Main street. We would like to call
your attention especially to the frequenting of this
place by the young colored girls of this town, many
under age. Our talking and pleading are in vain.
Therefore, we feel it our indispensable duty to petition
you to help us suppress the one evil mentioned above
if no more. We feel that this board composed of hon-
orable, intelligent, respectable, honest, law-abiding citi-
zens of this town will do something to eradicate this
awful evil, that is a disgrace to the self-respecting negro
of Kirkwood.

"'G. S. Brooks,
"'J. A. Mitchell et al.'

"Which was referred for consideration to a com-
mittee of said board of aldermen, composed of the fol-
lowing members, to-wit: Dennis Lane, Charles Ricker,
G. J. Kendell, who, on the second day of December,
1901, reported to said board of aldermen thereon, as
follows:

"'Kirkwood, Mo., Dec. 2, 1901.
"':The Honorable Mayor and Board of Aldermen:

"'The committee appointed to investigate the com-
plaint made by Messrs. Mitchell, Brooks, Arnold and
others, against Theodore Weber, a saloon-keeper on
Main street in the city of Kirkwood, have heard the
complainants and their statements that they have no
desire to injure Mr. Weber in the lawful pursuit of his

business as grocer and saloon-keeper, but knowing from their own observation that young colored men and girls were in the habit of congregating on his premises and thereby exposing themselves to the temptation of drinking liquor and otherwise misbehaving themselves, and being impelled by a desire for the welfare of their race decided to lay the matter before the proper authorities.

" 'Your committee would recommend that the city marshal be instructed to give the matter attention and that the request of the petitioners be complied with in suppressing the alleged offenses, and if found to continue, that the attention of the board again be called to the matter by the marshal.

" 'DENNIS LANE, Chairman.'

"Which report was filed with said board of aldermen in open session.

"Defendants say that the acts of defendants as herein recited, are the matters and things complained of by the plaintiff and not otherwise, and that in doing said acts, defendants were in the regular and lawful discharge of the duties of their said offices and acted in perfect good faith toward the plaintiff, as the representatives of the people of said city of Kirkwood, Missouri, and said city, and in so doing were prompted only by a desire to do what duty under the circumstances required.

"Further answering to plaintiff's amended petition, defendants say that all the matters and charges contained in said petition of citizens and report of said committee thereon, so as aforesaid filed with said board of aldermen of said city of Kirkwood, Missouri, and hereinabove set out and complained of in plaintiff's said amended petition, are true.

"Wherefore, having fully answered plaintiff's amended petition, defendants pray to be hence dismissed with their proper costs."

The petition presented to the board of aldermen

of the city of Kirkwood (copied in the petition and an-
swer) purports to be signed by fourteen colored citi-
zens of that city. Woodson, whose name appeared to
the petition, made affidavit that he did not sign it. As
to the other thirteen signers, the evidence is that they
did sign it, so that the allegation that the petition did
not bear the genuine signatures of any of the pur-
ported signers was not sustained by the evidence.

The uncontradicted evidence is that Weber, the
plaintiff, was present at the meeting of the board of
aldermen when the petition was presented and read
by the clerk of the board and that he heard it read and
was asked by the mayor of the city what he had to say
and replied that he had nothing to say. Weber denied
that he received any notice of the meeting of the com-
mittee appointed by the board to investigate the charge
against him and that he was not present when the
committee met, but the city marshal testified that the
committee told him to notify all parties in interest and
that he did so and in answer to what plaintiff said
when he was notified testified as follows:

"I told him that Dennis Lane and Mr. Kendell
both said they would have this meeting on Saturday
night and for me to see that all the parties concerned
were there. I did so. I notified all the parties con-
cerned and told Mr. Weber. I told Mr. Weber that the
meeting of the committee that was appointed to investi-
gate this dramshop of yours are going to meet to-night
and you are requested to be there, and he said, 'They
are going to investigate that. Why don't they tear up
that negro petition and throw it in the waste basket?'
and I said they wouldn't do it; I would advise you to
go down and see Mr. Lane."

The evidence is that both the petition and report of
the committee were filed by the clerk of the board of
aldermen, but that neither was spread upon the records
of that body as is charged in the petition; that these
papers were read in open meeting of the board, but

that no order was made to record either of them.   After the report of the committee was filed no further action was taken by the board of aldermen, until plaintiff made application for a renewal of his license to run from January 3 to July 4, 1902, when the board, presumably acting on the report of its committee, refused to renew the license.

There is a mass of evidence in the record in respect to the character of the house Weber kept, also evidence tending to prove that his trade fell off after the report of the committee had been filed.

Under the instructions given by the court the jury returned a verdict for the plaintiff and assessed his damages at $500.   After an unsuccessful motion for a new trial, the defendants appealed.

*George L. Edwards* for appellants.

(1)   Plaintiff's petition fails to state facts sufficient to constitute a cause of action.   (a)   Because the report of the committee filed and received by the board of aldermen is not libelous.   (b)   Because the defendants can not be held responsible for any libel, if any, contained in the petition of colored citizens filed with them as members of the board of aldermen of the city of Kirkwood, Missouri.   (c)   Because if said petition and report be taken together they are not libelous. (d)   Because if said report, or said report and petition taken together, were libelous, it is privileged, and therefore not actionable libel.   Cooley on Torts (2 Ed.), sec. 210-214, pp. 246-251; 18 American and Eng. Ency. of Law (2 Ed.), 1028; Wachsmuth v. Bank, 96 Mich. 427; Trebilcock v. Anderson, 117 Mich. 39; Callahan v. Ingram, 122 Mo. 355.   (2)   If the defendants are not protected by absolute privilege they are certainly protected by conditional privilege.   Sullivan v. Strahorn-Hutton-Evans Com. Co., 152 Mo. 268; Finley v. Steele, 159 Mo. 304; Wagner v. Scott, 164 Mo. 301.

*Zach. J. Mitchell, R. H. Stevens* and *John R. Warfield* for respondent.

(1) The proceeding before defendants was not a proceeding to revoke the license of plaintiff, nor one upon application by plaintiff for a license. It was therefore neither their legal nor moral duty to investigate plaintiff's character. Their acts, therefore, in so doing were neither privileged nor qualified privileges. Hancock v. Blackwell, 139 Mo. 440; Arnold v. Sayings Co., 76 Mo. App. 159; Finley v. Steele, 159 Mo. 304; Wagner v. Scott, 164 Mo. 289. (2) The only authority the defendants had to investigate plaintiff's character is found in section 13, ordinance 59, of the city of Kirkwood, which provides as a safeguard to the citizen for a five days' written notice to him. To proceed without such notice is to proceed without the authority of the law and their acts are void and without protection ,either as privileged or qualified privileged acts. The board were of but limited jurisdictional powers, if any, and their powers must be strictly construed. They had no jurisdiction over the matter contained in the petition. They were for the police court only. Secs. 5919-5924, R. S. 1899; Jefferson County v. Cowan, 54 Mo. 234; Cunningham v. Railroad, 61 Mo. 33.

BLAND, P. J.—It appears from the record in the cause that the action of a board of aldermen of a city of the fourth class, in respect to issuing or revoking dramshop licenses, was treated by the plaintiff's counsel and the court as the exercise of a legislative function. We think this was an erroneous view of the function exercised by these bodies in respect to dramshop license. The mayor and board of aldermen of cities of this class are given power to regulate and license dramshops. R. S. 1899, sec. 5978. Their proceedings in the exercise of this power must conform

in every respect to the laws of the State in respect to granting state and county license to keep a dramshop. To obtain a dramshop license from a city of the fourth class the same steps are required to be taken as are required to be taken to obtain a license from the county under the general laws of the State. The order of a county court granting a license to keep a dramshop is a judgment in favor of the licensee and the proceedings resulting in the order are judicial. The State v. Evans, 83 Mo. 319; State ex rel. v. Higgins, 84 Mo. App. (St. L.) 531.

Freeman, in his work on Judgments (4 Ed.), in section 2, says a judgment is "the decision or sentence of the law pronounced by a court or other competent tribunal upon the matter contained in the record."

The Supreme Court in banc, in State ex inf. v. Fleming, 147 Mo. l. c. 10, through SHERWOOD, J., defined a judgment to be "the decision by a court of competent jurisdiction upon a matter presented before it which involves a question of fact, or a question of law, or a compound question of both law and fact," and in that case held that the determination of a county court that a majority of the taxable inhabitants of a town signed the petition to be incorporated as a city as provided by section 977, Revised Statutes 1889, makes the order thus incorporating the city a judgment and not simply an administrative or legislative act. This ruling was followed on a second appeal of the same case. State ex inf. v. Fleming, 158 Mo. 558.

In County Court of Callaway County v. Inhabitants of Round Prairie Township, 10 Mo. 679; Dunklin County v. The District County Court of Dunklin County, 23 Mo. 449; The State ex rel. School District v. Byers, 67 Mo. 706; State ex rel v. Higgins, supra, and numerous other cases that might be cited, it was in effect held that where an inferior tribunal was by statute entrusted with jurisdiction to exercise certain functions that required the ascertainment of the existence

of certain facts, for instance, whether or not a petition upon which the tribunal was authorized to act was signed by the requisite number of qualified persons, the finding of the fact that the petition was so signed was the exercise of a judicial function. The decisions of the appellate courts of this State, without exception, treat the proceeding of a county court and excise commissioner in granting a dramshop license as judicial. The State v. Evans, State ex rel. v. Higgins, supra; The State ex rel. v. Heege, 37 Mo. App. (St. L.) 338; The State ex rel. v. Cauthorn, 40 Mo. App. (K. C.) 94; State ex rel. v. County Court, 66 Mo. App. (K. C.) 96; State ex rel. v. Higgins, 71 Mo. App. (St. L.) 180.

The board of aldermen of a city of the fourth class in passing upon an application for a license to keep a dramshop in such city is required to act upon a like petition and to find the same facts, in regard to the qualifications of the applicant, as does the county court in a like proceeding for a state and county license to keep a dramshop, hence, if the act of the latter is judicial, so also must be the act of the former and in such a proceeding the board of aldermen is as much a judicial tribunal as is the county court.

But it is contended that the mayor and board of aldermen had no power to revoke dramshop license. No such power was exercised or attempted to be exercised by them. The investigation ordered and made was with a view to regulate, not to revoke. The power to regulate dramshops is expressly conferred on the mayor and aldermen by section 5978, supra, and the defendants were not proceeding in a matter over which they had no jurisdiction, but in a matter in which they had express authority to proceed. The complaint filed before them, to the effect that Weber was keeping a disorderly house, was sufficient to move them to exercise the power conferred by the statute. The complaint by the colored citizens of the city was not

the complaint of the defendants; they were not parties to it and were not responsible for any statement made in it, and it is immaterial, so far as they are concerned, whether the statements were true or false, made in good faith or through malice. It was presented to them when in session and they were bound to receive it and to hear it read and when read might take action, or omit to act upon it as they deemed expedient.

The appointment of a committee to investigate the charges was not only authorized, but was a conservative and cautious step taken for the purpose of gaining information upon which they might confidently rely before proceeding to take any other step, and was clearly within their discretion. They are not responsible to any one for what is contained in the communication of the colored citizens of the city, nor for ordering that communication to be filed, nor for appointing a committee to investigate the charges contained in the communication, unless actuated by actual malice. Cooley on Torts, sec. 214; Callahan v. Ingram, 122 Mo. l. c. 365.

The appointment of the committee and the report of the committee were both in the discharge of official duty and are for that reason privileged. Hamilton v. Eno, 81 N. Y. 116; White v. Nichols, 44 U. S. 266; Cooley on Torts, Callahan v. Ingram, supra.

The complaint, the appointment of the committee, and the report of the committee, so far as the mayor and council are concerned, being privileged communications, malice can not be implied, and no recovery can be had against them without proof of actual malice. Briggs v. Garrett, 111 Pa. 404; Lovell Co. v. Houghton, 116 N. Y. 520.

There is no evidence in the record proving or tending to prove actual malice, and defendants' instruction in the nature of a demurrer to the evidence should have been given.

The judgment is reversed. All concur.