STATE ex rel SCHADE, Relator, v. RUSSELL, etc., Respondent.

St Louis Court of Appeals, May 12, 1908.

1. **DRAMSHOP LICENSE: Petition: Cities of the Fourth Class: Board of Aldermen: Mayor.** In cities of the fourth class the mayor and board of aldermen have power to regulate the granting of licenses for dramshops, and in the exercise of that power must do so by ordinance.    [Revised Statutes 1899, sections 5900, 5951, 5966, 5978.]    And where the ordinances of a city of the fourth class, enacted in pursuance of said statutes,

State ex rel. v. Russell.

provide that an applicant for a dramshop license shall present a petition asking for a license and that the board of aldermen shall grant it to an applicant who applies in due form, backed by a proper petition, it is the duty of the board of aldermen to pass upon the sufficiency of the petition without participation of the mayor, except in case of tie vote. When a license is ordered by the board of aldermen, the mayor can not refuse to sign it on the ground that the petition was insufficient.

2. ———: ———: ———: **Petition for License.** Where a board of aldermen of a city of the fourth class ordered a dramshop license issued to an applicant and the order recited that the petition of the applicant was signed by a majority of the taxpaying citizens and guardians of minors owning property in the block, where the saloon was to be kept, and that in the opinion of the board, the applicant was a law-abiding, assessed, taxpaying citizen over twenty-one years of age, this was a finding of the requisite facts regarding the petition to authorize the board to order a license.

3. ———: ———: ———: **Judicial Act.** A board of aldermen, in passing upon the sufficiency of a petition for a dramshop license and ordering the issuance of a license, acts judicially.

4. ———: ———: ———: ———: **Presumptions.** The order of a board of aldermen of a city of the fourth class, directing the issuance of a license, can not be attacked by inquiring into the evidence upon which the sufficiency of the petition for the license was determined. It can not be shown, in a mandamus proceeding to compel the signing of a dramshop license, ordered by such board, that the signers of the petition were not sufficient as shown by the last previous assessment list, nor is it necessary to the validity of such order for it to recite that the sufficiency of the petition was determined from the assessment list.

5. ———: ———: **Mayor: Mandamus.** The mayor of a city of the fourth class in signing a dramshop license ordered by the board of aldermen acts ministerially and he may be compelled to sign a license, properly ordered by the board, by mandamus.

## Original Proceeding for Writ of Mandamus.

PEREMPTORY WRIT AWARDED.

*Edw. D. Hays* for relator.

(1)    The mayor of a city in signing a license for the sale of intoxicating liquor performs a purely ministerial duty; and if a license is granted by the board of aldermen the signing by the mayor may be enforced by mandamus.    The law clothes the mayor with no power to review or revoke the act of the board.    The law imposes upon him the mandatory and ministerial duty of signing the license.    R. S. 1899, sec. 5951; 14 Am. and Eng. Enc. Law (1 Ed.), p. 171; Braconier v. Packard, 136 Mass. 50.    (2)    A ministerial duty of the mayor may be enforced by mandamus.    26 Cyc. 280 (2) ; State ex rel. v. Meier, 72 Mo. App. 618; State ex rel. v. Meier, 142 Mo. 439.    (3)    The granting of a dramshop license by a board of aldermen is discretionary.    But after such actions on their part as determined and conclude and eliminate their discretionary power, then the question becomes one of legal duty enforceable by mandamus.    And where any tribunal in which discretionary power is lodged has exercised its discretion and has given its conclusion upon the facts before it, what remains to be done to make its conclusion effective is purely ministerial, and mandamus will lie to compel its performance.    23 Cyc. 137 (7) ; 26 Cyc. 192 (3) ; Shaw v. Baker, 32 Mo. App. 98; State ex rel. v. Rauck, 34 Mo. App. 325.

*T. D. Hines* for respondent.

(1)    The relator's motion for judgment on the pleadings should be denied for the reason that the amended return of respondent, after making certain specific admissions, sets out the substantive matter of defense and then denies all the other allegations of the writ.    This raises an issue of fact as well as of law, and in such cases a motion or judgment on the pleadings should be overruled.    State ex rel. v. Water Works, 74 Mo. App. 273; State ex rel. v. Moss, 35 Mo. App.

441; State ex rel. v. Rogers, 79 Mo. 283. (2) Mandamus will not be granted unless relator is clearly entitled to the specific right sought to be enforced by the writ. State ex rel. v. Fort, 180 Mo. 109. State ex rel. v. Williams, 99 Mo. 291; State ex rel. v. Smith, 64 Mo. App. 313; Merrill on Mandamus, sec. 56, p. 62; State ex rel. v. McIntosh, 205 Mo. 635. (3) Mandamus will not lie to control the exercise of discretionary power. In such cases it will lie to compel them to act, yet it will not dictate the terms of said discretion by directing what judgment to enter. State ex rel. v. Francis, 95 Mo. 44; State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Oliver, 116 Mo. 188.

STATEMENT.—This is an original proceeding for the writ of mandamus to compel respondent, as mayor of the city of Jackson, in Cape Girardeau county, to sign a dramshop license issued by the board of aldermen to relator. The facts as stated are taken from the statements of the alternative writ. In the month of February, 1908, relator, Conrad Schade, applied to the county court of Cape Girardeau county and the board of aldermen of the city of Jackson, to grant him a license to keep a dramshop on part of lot 51 in a certain block described by the streets which bound it. Relator's application to the county court was accompanied by a petition of property-owners in due form and properly signed by the proper number of qualified petitioners and his application for license was in due form and properly verified by affidavit. On March second, at the November term of said court, the petition and application were taken up, considered and an order entered by the court reciting the presentation of a petition of assessed taxpaying citizens and guardians of minors owning property within the block in which lot 51 was situate, praying a license be granted to Conrad Schade to keep a dramshop on said lot; that Schade had pre-

sented his application and bond for license as directed
by law; that the court had examined the petition and
bond and found the former was signed by a majority
of the assessed taxpaying citizens and guardians of
minors owning property in the block where the dram-
shop was to be kept; that the bond was signed by a
sufficient number of solvent sureties and the court being
of the opinion the applicant was a law-abiding, as-
sessed and taxpaying citizen above twenty-one years
of age, approved his petition and bond and ordered the
clerk of the court to issue a license permitting him to
keep a dramshop at the place mentioned for six months
on production of receipts of the collector, showing all
taxes levied on same had been paid. Afterwards Schade
filed the requisite bond with the clerk of the county
court and it was approved by said clerk. The appli-
cant had been conducting a saloon at the same place
for two prior license periods, and on the same day
(March 2) filed with the county clerk his affidavit show-
ing the whole amount of liquors received at his stand
during the six months next preceding April 6, 1908,
and on April 13, filed with said clerk a receipt from
the collector of the county showing payment of the fol-
lowing sums of money: State license tax, $100, County
license tax, $250, county clerk's fee, $1.75, total, $351.75.
Thereupon the clerk of the county court executed and
delivered to relator a license under the seal of the county
court, empowering relator to keep a dramshop for six
months, commencing April 16, 1908, on part of lot 51
in the city of Jackson. On February 20, 1908, rela-
tor filed with the city clerk of said city a duly verified
application for a municipal license to keep a dramshop
on said lot, accompanied by a petition in due form and
signed by the requisite number of competent signers
in the block. Certain ordinances of the city of Jack-
son recited in the alternative writ, provided that appli-
cations for license as a dramshop keeper should be made

in writing to the board of aldermen, accompanied by a petition, and that to authorize the granting of such licenses the petition must be signed by a majority of the resident taxpaying citizens and guardians of minors owning property in the block in which the dramshop was to be kept. Certain other conditions were imposed on applicants for licenses by the ordinances of the city which need not be recited, because there is no contention relator failed to comply with them. The relevant requirements of the ordinances are that an applicant for license shall present a petition signed by a majority of the taxpaying citizens and guardians of minors in the block or square in which the dramshop is to be kept, asking that a license be granted the applicant; that the board of aldermen shall grant a license to an applicant who applies in due form, backed by a proper petition, and gives bond to the city of Jackson, with a penalty of $2,000, signed by two or more solvent sureties, to be approved by the board, conditioned that he will keep an orderly house, etc. The alternative writ recites the application and petition filed by relator with the city clerk complied in every way with the requirements of the laws of Missouri and with the ordinances of the city of Jackson. At a meeting of the board of aldermen of said city on March 2, 1908, said application and petition were taken up for consideration and the following order was entered:

"Now is presented a petition of assessed tax-paying citizens and guardians of minors owning property in the block in which lot No. 51 in this city is situated, praying that a license be granted to Conrad Schade to keep a dramshop on part of lot No. 51 as aforesaid; and the said Conrad Schade also presents his application for a license to keep a dramshop at part of lot No. 51 as aforesaid. And the board having examined said petition, finds that it is signed by a majority of the assessed taxpaying citizens and guardians of minors,

owning property in the block in which lot No. 51 is sit-
uated, and being of the opinion that the applicant is a
law-abiding, assessed taxpaying male citizen above
twenty-one years of age, ordered that the petition be
approved, and that upon filing of the bond, subject to
the approval of the board, the clerk is directed to issue
a license to said Conrad Schade to keep a dramshop at
the place aforesaid for a term of six months upon the
production to him of the collector's receipt showing that
all taxes levied in the same have been paid."

On March 9, 1908, relator filed with the city clerk
his license bond, complying with all the requirements
of the ordinances of the city and the law of the State
and signed by sufficient solvent sureties.    On the same
day the board of aldermen took up, considered and ap-
proved said bond by an order entered of record, and or-
dered the city clerk to issue a license to relator.    There-
after relator took such further steps as were needed to
entitle him to a license, which steps we will not recite
because there is no dispute about them.    On April 16,
1908, the city clerk issued a license to relator to keep
a dramshop on the lot aforesaid for six months, com-
mencing April 16, 1908, which license was signed of-
ficially by the city clerk and collector and the seal of
the city was affixed to it.    Respondent R. W. Russell,
the Mayor of the city, refused to sign the license and
this proceeding was instituted to compel him to sign
it, as it is inoperative until he does.    It is alleged his
refusal to sign was corrupt, arbitrary and illegal, and
will result in great loss to relator and the sacrifice of
the latter's business unless relief is granted by the court.
A motion to quash the alternative writ was filed April
17, 1908, chiefly on grounds which have been corrected
by amendments.    The other grounds stated in said mo-
tion are repeated in the return and may be considered
in connection with relator's motion, filed after the re-
turn came in, for judgment on the pleadings.    In the

return respondent admits he is and was at the dates mentioned in the petition, mayor of the city of Jackson, admits relator obtained license from the county court, presented to the board of aldermen of the city an application for license to keep a dramshop at the place mentioned, but denies said application was accompanied by a petition containing the names, as shown by the last previous assessment, of a majority of the taxpaying citizens and guardians of minors owning property in the block in which the dramshop was to be kept. Respondent avers the proceedings of the board of aldermen do not show relator had a majority of such eligible petitioners according to the last previous annual assessment, which assessment. he contends must control the decision of what persons were and were not eligible as petitioners for dramshop licenses. The return alleges further that when relator's application was presented to the board of aldermen for its approval, the board did not examine the last previous assessment of said city to see if the names on relator's petition were to be found on said assessment; but some person produced before the board a list of names on a small paper and only the names on said slip of paper were recognized by the board as being proper petitioners; that said list or paper was incorrect, as it did not contain all the assessed taxpaying citizens and guardians of minors owning property in the block where the dramshop was to be kept; but nevertheless the board used it in place of the last assessment and omitted to consult said assessment in determining who were and were not assessed taxpaying citizens and proper petitioners. The return then mentioned certain signers on relator's petition who were not entitled to be counted as petitioners, and certain other persons who were assessed taxpaying citizens owning property in the block where the dramshop was to be kept, residents of Jackson at the time, and shown to be such by the last previous annual assessment of

the city, who were not taken into account by the board of aldermen in passing on the application for license, because their names were not on the aforesaid paper. It is further averred that by mistake the board were led to believe thirteen persons constituted the whole number of eligible petitioners as shown by the last annual assessment, when in truth, there were ten other persons who should have been considered such, as they were assessed taxpaying citizens in the block and residents of the city according to the last annual assessment; that in this manner it was made to appear to the board relator's petition had on it the proper number of signers when in truth it had only six out of twenty-one eligible signers; that said mistake was not discovered at the time of the action of the board, but was known to respondent at said time and he refused, in good faith, to sign the license for relator because he knew the application was not accompanied by a valid petition. It is further averred the record of the proceedings of the board of aldermen does not show the last previous assessment of the city was consulted by the board and for this reason the board had no jurisdiction to grant a license and the proceeding was void. Relator moved for judgment on the face of the pleadings in this cause, contending the return states no facts to justify respondent in refusing to sign the license.

GOODE, J. (after stating the facts).—Jackson is a city of the fourth class and section 5978 of the statutes (1899) relating to such cities, says the mayor and board of aldermen shall have power and authority to regulate all licenses and levy and collect the license tax on dramshops.    In the exercise of this power, ordinances, of which we have recited the portions relevant to the present proceeding, were enacted by the mayor and board of aldermen of Jackson to regulate the granting of saloon licenses.    All the requirements of those ordinances, as well as of the statutes of the State relating to the

granting of dramshop license, must be taken to have been complied with by relator, provided his application was accompanied by a petition containing the proper number of eligible signers.   The alternative writ alleges full compliance with both statutes and ordinances and these allegations stand untraversed except the one asserting the sufficiency of the petition.   We first inquire who is to determine its sufficiency, and find the answer in sections 5900, 5951, 5956 and 5978 of the Revised Statutes of 1899.   The effect of those sections is to entrust to the mayor and board of aldermen the power to regulate the granting of dramshop and other licenses, and authorize said officials to exercise the power, as they do most other powers, by ordinance.   The sections provide that the mayor's part in the passage of all ordinances, and hence of those regulating licenses, shall consist in presiding over the board without voting, except in case of a tie, and approving ordinances passed by the board by signing them, or disapproving them by withholding his signature, and thereby preventing them from taking effect until re-enacted by a vote of two-thirds of the members of the board.

In view of those statutory provisions and of the ordinances enacted thereunder, we hold it was the duty of the board of aldermen to pass on the sufficiency of relator's petition, without participation by the mayor, except in the way of advice or protest, unless there was a tie vote.   The ordinances previously passed by the city regulating dramshop licenses,  explicitly provided that applications for such licenses should be made to the board of aldermen and accompanied by the proper petition; if the petition contained two-thirds of the eligible signers the board should grant the license, and also, the board should pass on the applicant's bond. We remark, in passing, that the mandatory provision for a license when the petition is signed by two-thirds of the property-owners, was drawn in analogy to sec-

tion 2993 of the statutes; and in truth, the ordinances throughout followed the statutes. However our point just now is, that all their clauses contemplate a decision by the board of aldermen of whether the petition is properly signed and the applicant has complied with the other conditions precedent to obtaining a license. The entire matter is remitted to the determination of the board. This being true, the next inquiry is, what did the board decide regarding relator's application and petition? By reading the order it will be seen the board expressly found the petition was signed by a majority of the taxpaying citizens and guardians of minors owning property in the block where the saloon was to be kept, and that, in the opinion of the board, the applicant was an assessed taxpaying citizen over twenty-one years of age. This was a finding of the requisite facts to give the board jurisdiction to act on the application and to authorize it to order a license to be issued to him, as was done. The provisions of the ordinances of the city as to the application and petition being in analogy to the statutes relating to dramshop licenses, those cases are in point which determine how a county court acquires jurisdiction of an application for a dramshop license and what is prerequisite to granting the application. As to the essentials to the exercise of jurisdiction see citations under section 2997, 2 Mo. Ann. Stat. In truth respondent does not contend on any other ground than the insufficiency of the petition, that the board was without power to grant the license, though he does contend, in addition, the order for the license was invalid because it omitted to show the board used the last annual assessment to determine who were qualified signers; arguing that section 2993 of the statutes makes said list the sole evidence on the question. Neither is the contention put forward that the granting of each particular license to dramshop keepers, hawkers, peddlers and the other classes of per-

sons enumerated in section 5975 of the statutes, is a legislative act to be done by ordinance, or resolution equivalent thereto, with the mayor acting as part of the Legislature and approving or vetoing according to his judgment.    The proposition insisted on is not that the mayor must sign the order of the board for a license in order to validate the order; for it seems to be conceded his signature is not essential to its validity. But it is essential to the validity of the license issued by the clerk pursuant to the order; and respondent insists he has a discretion to refuse to sign the license and may justify his refusal by showing the board ordered it on an insufficient petition.    We think the effect of the general ordinance which had been adopted by the city of Jackson relating to saloon licenses, was to constitute the board of aldermen a tribunal clothed with authority to pass on the sufficiency of a particular application and petition, and that in doing this the board acts judicially instead of legislatively.    This question of the character of the proceedings by a board of aldermen in granting dramshop licenses is decisive, not only against the right of the mayor to participate in the proceedings as being municipal legislation, but of the conclusiveness of the board's action on the rights of the applicant.    In an opinion by Judge BLAND, wherein the subject was carefully examined, this court declared the decision by a board of aldermen of a fourth-class city, of whether an applicant for saloon license had complied with the law and entitled himself to a license was no less judicial than a similar decision by a county court or excise commissioner, which has always been regarded ·as judicial.    [Weber v. Lane, 99 Mo. App. 69, 71 S. W. 1099, and cases cited in opinion.]    We adhere to said ruling as well supported by principle and precedent. After the board of aldermen of Jackson had found in favor of relator's petition and qualifications, and had ordered a license to issue, he submitted his bond, the

board approved it, he paid all fees, took the collector's receipt for same, the city clerk issued the license and said clerk and the collector signed it as the law provides. [R. S. 1899, sec. 5951.]    The statute reads as follows:

"All license tax shall be regulated by ordinance, and no license shall be issued until the amount prescribed therefor shall be paid to the city collector, and no license shall in any case be assigned or transferred. Licenses shall be signed by the mayor and clerk and countersigned by the collector, and the clerk shall affix the corporate seal thereto."

Under said section it was as much the duty of respondent, the mayor, to sign relator's license, as it was the duty of the city clerk and collector.    And we think in the instance of each of said officials, the duty was ministerial and not discretional—was intended not as an additional determination by them of relator's right to a license, but as an attestation that one had been granted him.    Respondent says he was justified in refusing to sign because the board had found erroneously there were sufficient competent signers to the petition.    To uphold this contention without an averment of fraud in the conduct of the board, we must be prepared to say the truth of a judicial finding may be called in question collaterally; and this, of course, we will decline to say. If judicial proceedings could be thus collaterally challenged and annulled, every order of a county court or city council for license, and every finding of fact on which the order was based, could be reopened and the facts lying back of the record again examined.    The law does not accept such a doctrine; but having lodged the power to find the facts in a body or tribunal which acts judicially, assumes its findings are true.    [State v. Evans, 83 Mo. 319, 322; State v. Cauthorn, 40 Mo. App. 74, 99; State v. County Court, 45 Mo. App. 394; Cooper v. Hunt, 103 Mo. App. 9, 77 S. W. 403, and cases cited.]

Respondent's refusal would stand on a very different footing if fraud was shown on the part of the board, especially in an equity suit. It might well be that such a finding, like any other judgment induced by fraud practiced in procuring it, would be vacated. This was held in a recent case where it was shown a county court fraudulently found the requisite number of petitioners had asked the granting of a dramshop license, and had refused to make proper entries of record so as to enable the remonstrators to contest the matter by certiorari. [Burkharth v. Stephens, 117 Mo. App. 425, 94 S. W. 720.] The allegations of the present return go no further than to say the members of the board of aldermen were misled by the use of a slip of paper, without charging they were fraudulently imposed on by relator or any one else, or acted from fraudulent motives. Indeed no accusation whatever is made against relator in connection with the findings, nor any accusation against the board, except omitting to consult the assessment list.

We might concede that if the record of the proceeding showed the board omitted to use the assessment list, its finding would not be conclusive; but though it was bound to find enough competent signers had petitioned for the license and to find the other conditions precedent existed, neither by statute nor common law was it required to recite, in its order, the evidence on which it found. [Lingo v. Burford, 112 Mo. 149, 155.] It suffices, in the absence of fraud and collusion, that evidence satisfactory to it, was utilized. This point was, in effect, determined in Cooper v. Hunt, 103 Mo. App. l. c. 18. To permit an inquiry into the evidence used by the board with a view to annulling its findings, if the evidence was incompetent, would be but a roundabout way of allowing a collateral attack on the action of a tribunal in a proceeding which it was empowered to adjudicate.

Lastly, it is said the mayor of a city of the fourth

class and governmental and municipal executive offi-
cers generally, cannot be controlled in the performance
of official duties by the courts; and on this proposition
we are cited to contrary decisions by the Supreme Court.
[State ex rel. v. Meier, 143 Mo. 439, 45 S. W. 306; Al-
bright v. Fisher, 164 Mo. 56, 67, 64 S. W. 106.]    In
the first case it was held, affirming the decision of this
court (State ex rel. v. Meier, 72 Mo. App. 618) that the
president of the council of the city of St. Louis might
be compelled by mandamus to sign an ordinance as a
mere matter of statutory attestation, when he had no
right to participate as a legislator in its passage.    In
the second case this decision was overruled in an opinion
only remotely concerned with the point and dealing with
the power of a circuit court to restrain the municipal
assembly of St. Louis from passing a certain ordinance
granting a street railway company the right to lay tracks
over a street, on the ground the requisite number of
property-owners had not petitioned for the track.    The
judgment in Albright v. Fisher is exactly    in    point
against the right of this court to inquire into the signa-
tures to relator's petition, but digressed in passing on
the question determined in State ex rel. v. Meier, to-
wit: the power to compel a city executive to perform a
purely ministerial duty.    Nevertheless if it stood as
rendered, unqualified by later opinions, it well might be
cited as a precedent for respondent.    The opinion seems
to lay down two reasons why courts may not control
by mandamus a municipal executive or other officer who
must sign ordinances, first; the Constitution distributes
the powers of government into three departments, exec-
utive, legislative and judicial, and forbids one depart-
ment from entrenching on the others, except in instances
expressly directed or permitted by the Constitution.
Hence when an exception is asserted in favor of con-
trolling an executive or legislative official by a writ from
a court, the party demanding the writ must be able

to put his finger on a constitutional clause allowing the exception. Secondly, that the signing of a bill by a mayor or other presiding officer of a municipality is a legislative act, inasmuch as municipal assemblies are part of the legislative department of the State, and the presiding officer of the assembly must exercise judgment in determining whether or not to sign an ordinance. In State ex rel. Abel v. Gates, 190 Mo. 540, 559. The Supreme Court appears to have rejected the doctrine of Albright v. Fisher, that municipal officers are not subject to judicial control in the exercise of ministerial powers, as it held a municipal assembly itself was subject to control by the courts in an instance where it attempted to disguise a ministerial act under the form of legislation. The court adhered to the precise point in judgment in Albright v. Fisher, but went so far in opposition to the opinion therein, as to sustain the power of a circuit court to prevent the passage of an ordinance, which was really a contract pertaining to the ministerial and administrative functions of the city and not to its legislative functions. The court also denied the doctrine declared in Albright v. Fisher, that a municipal council is a portion of the legislative department of the State government and hence emancipated from control by the courts. We have no hesitation in saying that under the decisions of the Supreme Court as they now stand, municipal officers, and particularly the executive officers of a municipality, may be charged with ministerial duties which they can be compelled to perform by mandamus. It would be difficult to conceive any duty more ministerial than the one imposed on respondent to sign a license ordered by the board of aldermen. In litigation of this character, it has been ruled a county court may be compelled to grant a license to an applicant who has complied with the law and presents the requisite petition, and also that a city council may. [State ex rel. v. Ruark, 34 Mo. App. 325; State ex rel. v. Baker,

32 Mo. App. 98.]    If the council, which exercises judicial functions in the matter, may be coerced by mandamus, as the case last cited holds, it would be strange if the mayor, who only exercises a ministerial duty, stood exempt from the writ and might refuse to sign a license.    That a mayor is subject to judicial coercion in the discharge of ministerial duties, is the general doctrine of the courts, 26 Cyc. 280; citing, Dreyfus v. Lonergan, 73 Mo. App. 336; and see other citations in the notes.    The exact point under advisement was determined by the Supreme Judicial Court of Massachusetts in Branconier v. Packard, 136 Mass. 50.    In said case it appeared a petition and application for license had been approved by the board of aldermen of Brockton, and a license had been granted by the board to Branconier; but the mayor refused to sign it, though the statutes of the State require every license to be signed by the mayor and clerk.    The court ordered the mayor to sign.

We have carefully gone over the various points raised by respondent and are convinced they are without merit and that it was respondent's plain duty to sign relator's license.    Hence a peremptory writ will be awarded.    All concur.